**Jimmy Dean PLATT, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 92A03–9004–CR–146.**

Court of Appeals of Indiana, Third District.

March 25, 1991.

Richard J. Thonert, Romero & Thonert, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Jimmy Dean Platt appeals his convictions for operating a motor vehicle while intoxi-

cated[1] and for operating a motor vehicle with a blood alcohol content (BAC) of .10% or more.[2] Although Platt raises nine allegations of trial court error, we need only address the first issue to resolve this appeal. That issue is whether the trial court erred by denying Platt's motion to suppress evidence.

We reverse.

In the early morning hours of May 7, 1989, Whitley County Sheriff's Deputy Dennis Ruch was on patrol in his squad car when he observed a vehicle parked on the opposite side of the road. Ruch turned to investigate, and pulled in behind the stopped vehicle. As he did so, the other vehicle's lights turned on and the vehicle sped away, throwing gravel from the roadside berm behind it.

At that point, Deputy Ruch activated his lights and followed the vehicle for about one quarter of a mile before it pulled off to the side of the road. Ruch then approached the vehicle, and asked the driver, later identified as Platt, for his license and registration. While he waited for Platt to produce these documents, Ruch detected a strong odor of alcohol. After administering a portable breath test to Platt, Ruch transported Platt to the Whitley County Jail. At the jail, Platt performed field sobriety tests and underwent a breathalyzer test. The breathalyzer examination showed that Platt had a BAC of .17%. Platt was then arrested, and later admitted to having consumed alcohol earlier that evening.

■ Platt contends that the trial court erred by denying his motion to suppress evidence because the investigative stop of his vehicle was not supported by the reasonable suspicion that he engaged in criminal activity. Platt asserts that the sole act of driving away from an law enforcement officer does not justify such an investigative stop. We agree.

A police officer may make an initial or investigatory stop of a person or automobile under circumstances where probable cause for arrest is lacking, if facts known to the officer at the time of the stop are such as to warn a man of reasonable caution that an investigation is appropriate.

*Russell v. State* (1988), Ind., 519 N.E.2d 549, 551 (citing *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889). "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Id.* (quoting *Adams v. Williams* (1972), 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612). To justify a warrantless intrusion, an officer need only point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion upon an individual's right of privacy. *Gipson v. State* (1984), Ind., 459 N.E.2d 366. Viewing the circumstances in their totality, the detaining officer must have a particularized and objective basis for suspecting the individual of criminal activity. *U.S. v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621.

■ During Deputy Ruch's testimony at trial, Platt moved to suppress all evidence obtained subsequent to the investigatory stop, claiming there were no specific and articulable facts which warranted the detainment. The State asserted, as it does now on appeal, that Platt's behavior in leaving the scene and in failing to immediately pull over once Ruch activated his red lights created a reasonable suspicion of criminal activity. However, once Ruch activated his deck, grill, and overhead lights, he had already determined to detain Platt, and a fourth amendment seizure was underway.[3] Therefore, we may not consider

1. IND.CODE 9–11–2–2 (1988), a Class A misdemeanor.

2. IC 9–11–2–1 (1988), a Class C misdemeanor.

3. Although Indiana cases on the issue of conduct constituting a "seizure" are scarce, it is generally accepted that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall* (1980), 446 U.S.

Platt's conduct from the point Ruch turned on the red lights of his marked squad car as evidence of suspicious activity. Ruch's reasonable suspicion of criminal conduct must have been based on specific and articulable facts occurring prior to the seizure of Platt. To conclude otherwise would allow a police officer's hunch to transform into reasonable suspicion by inducing the conduct justifying the suspicion. *See Commonwealth v. Thibeau* (1981), 384 Mass. 762, 429 N.E.2d 1009.

Ruch testified that his attention was drawn to the vehicle parked along the side of the road at 3:00 in the morning because, as he put it, "our curiosity is up because we want to know if anybody's in trouble or whether the vehicles [sic] been abandoned, or, or whatever." Record, p. 177. He then observed Platt sitting in the driver's seat, and made a U-turn to pull in behind the vehicle. When the squad car came to within fifty or sixty feet of Platt's vehicle, Platt turned his lights on and sped away, his tires throwing gravel from the roadside.

These are the only facts known to Deputy Ruch which led him to believe Platt was engaged in criminal activity. Thus, the sole indication of criminal conduct is Platt's driving away, albeit rapidly, from a law enforcement officer. Ruch did not characterize Platt's driving as reckless or otherwise indicative of a motor vehicle operation violation; rather, Ruch described how the vehicle merely "went away in a, in a bit of a hurry...." Record, p. 180.

There is no indication in this case that Platt or his vehicle matched the description given by the victim of a crime that had just been committed (*See Coates v. State* (1989), Ind., 534 N.E.2d 1087). Platt's "suspicious" conduct did not take place in an area of known criminal activity (*See Walker v. State* (1977), 173 Ind.App. 263, 363 N.E.2d 1026). At no time did Ruch articulate a violation of motor vehicle laws as a reason for the stop (*See Walker v. State* (1988), Ind., 527 N.E.2d 706, *cert. denied* — U.S. ——, 110 S.Ct. 161, 107 L.Ed.2d 118). Throwing gravel from the roadside shoulder in an attempt to return to the travelled portion of a state highway does not alone amount to the type of erratic driving that would allow a police officer to make such a stop (*See Jones v. State* (1984), Ind.App., 467 N.E.2d 1236).

Platt directs our attention to *State v. Nesius* (1990), Ind.App., 548 N.E.2d 1201, where the court affirmed the trial court's grant of a motion to suppress evidence. In *Nesius*, a police officer observed the defendant stop and exit his car on an isolated stretch of highway. As the officer approached, the defendant re-entered his car and drove away. *Id.* The officer had knowledge of recent gasoline and auto thefts in the area, but no gas or autos were available there for the defendant to steal. There had been homes burglarized in the vicinity, yet the defendant was not a suspect in any crime. Lastly, the officer thought that the defendant may have stopped to pick up or drop off contraband, although there was no evidence that a contraband dropoff point had been established at that location, and the officer acknowledged that he never saw anything in the defendant's hands. *Id.*

The court in *Nesius* found that the officer's generalized and subjective basis—rather than a particularized and objective basis—for suspecting the motorist of criminal behavior was not reasonable. *Id.* at 1204. In the instant case, there are *no*

544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497. *See also Michigan v. Chesternut* (1988), 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (unanimous Court overturns finding that seizure occurred where record did not reflect indicia, such as police activated sirens or flashers, that would communicate to a reasonable person an attempt to capture or otherwise intrude upon defendant's freedom of movement). As in *State v. Stroud* (1981), 30 Wash.App. 392, 634 P.2d 316, the use of overhead emergency lights by an officer of the law constitutes a show of authority sufficient to convey to any reasonable person that voluntary departure from the scene is not a realistic alternative. *Cf. Huey v. State* (1987), Ind.App., 503 N.E.2d 623 (initial encounter in which police officer approached motorist *already stopped* in traffic to ask why the motorist appeared to be following another vehicle, found to be consensual contact and not a stop implicating fourth amendment interests). A thorough discussion of conduct constituting a seizure may be found at 3 W. LaFave, Search & Seizure § 9.2(h) (2d ed. 1987).

specific and articulable facts, other than Platt's flight, that give rise to the suspicion of criminal activity. Flight alone is not sufficient.

The State would urge this court to affirm on the basis of the holding in *Hailey v. State* (1988), Ind., 521 N.E.2d 1318, where a police officer made an investigatory stop of the defendant who "acted suspiciously," changing direction and increasing his speed when he noticed the officer watching him. However, unlike the case at bar, the defendant was wanted by the police for the commission of burglary, and the officer had specific instructions to arrest the defendant. Thus, *Hailey* is distinguishable from the present case.

Deputy Ruch had no particularized and objective basis for suspecting Platt of criminal activity, other than Platt's attempt to drive away. We hold that this is not sufficient to support a reasonable suspicion of criminal activity. Ruch was certainly free to follow Platt, without immediately effecting a seizure, for the purpose of observing Platt's driving abilities. While the interest in keeping intoxicated motorists off the highways of this state is indeed great, we cannot countenance unreasonable seizures in violation of the fourth amendment.

The trial court erred in denying Platt's motion to suppress evidence obtained as a result of his illegal detainment.

Reversed and remanded.[4]

GARRARD and SHIELDS, JJ., concur.

---

**4.** In the event the State elects to retry Mr. Platt, it should be noted that double jeopardy principles prohibit his conviction of driving while intoxicated and driving with a BAC of .10% or more, the latter being a lesser included offense of the former. *Sering v. State* (1986), Ind.App., 488 N.E.2d 369.