Jimmy Dean PLATT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 92S03–9203–CR–195.

Supreme Court of Indiana.

March 24, 1992.

Richard J. Thonert, Romero & Thonert, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Can flight from a law enforcement officer furnish sufficient ground for a limited investigative stop? We hold that it can. Jimmy Dean Platt was convicted of operating a motor vehicle while intoxicated, a class A misdemeanor, Ind.Code § 9–11–2–2 (West Supp.1988), and operating a motor vehicle with a blood alcohol content (BAC) of .10% or more, a class C misdemeanor,

Ind.Code § 9–11–2–1 (West Supp.1988).[1] The Court of Appeals reversed, holding that the investigative stop of Platt's car was unconstitutional. *Platt v. State* (1991), Ind.App., 568 N.E.2d 1028. The State seeks transfer.

### Facts

At approximately 3 a.m. on Sunday, May 7, 1989, Whitley County Sheriff's Deputy Dennis Ruch was on routine patrol in his squad car. As he headed south on State Road 205 between Churubusco and Columbia City, he noticed a vehicle parked on the side of the road, headed in the opposite direction, with someone in the driver's seat. Deputy Ruch continued on a short distance, made a U-turn, then pulled in behind the parked car. The parked car's lights went on, and it immediately sped away, throwing gravel from the roadside berm behind it.

Deputy Ruch activated his lights and followed the vehicle for about one quarter of a mile before it pulled off to the side of the road. Ruch then approached the vehicle on foot, and asked the driver, later identified as Platt, for his license and registration. While waiting for Platt to comply with this request, Ruch detected a strong odor of alcohol. After administering a portable breath test to Platt, Ruch transported Platt to the Whitley County Jail. At the jail, Platt performed field sobriety tests and underwent a breathalyzer test. The breathalyzer test showed that Platt had a BAC of .17%. Platt was then arrested. He signed a waiver of rights and admitted to having consumed alcohol earlier in the evening.

Platt filed a pretrial motion to suppress, claiming that the investigative stop was unconstitutional and seeking to exclude all evidence subsequently gathered. The trial court denied the motion. A jury found Platt guilty on both counts. Platt appealed, and the Court of Appeals reversed, holding that the trial court erred in denying the motion to suppress.

The Court of Appeals concluded that Ruch's initial investigative stop of Platt's car was an unreasonable seizure in violation of the fourth amendment. Because we believe a proper balance is struck under the fourth amendment by allowing police officers to stop temporarily an individual who flees upon seeing police or a squad car, we grant transfer and vacate the decision of the Court of Appeals.

### I. "Terry" Stops and the Fourth Amendment

As a general rule, automobile drivers are not shorn of their fourth amendment protections when they leave their homes and enter their automobiles. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). However, "there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking." *Luckett v. State* (1972), 259 Ind. 174, 179, 284 N.E.2d 738, 741 (emphasis in original).

The so-called "stop and frisk" doctrine announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), has allowed courts to gauge the reasonableness of particular investigative stops by striking "a balance between the public interest [behind the investigation] and the individual's right to personal security free from arbitrary interference from law officers." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975). Where the public interest served by the officer's investigation is great and the intrusion on individual privacy is small, investigative stops of limited duration and "reasonably related in scope to the justification for their initiation" have been upheld. *Id.* at 881, 95 S.Ct. at 2580 (quoting *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884). "To justify a warrantless intrusion, the police officer need not have probable cause to make an arrest, but must 'point to

1. Both Ind.Code §§ 9–11–2–2 and 9–11–2–1 have since been repealed and replaced by Ind.Code §§ 9–30–5–2 and 9–30–5–1 (West Supp.1991). The only substantive change in the new statute is as follows in section 1: where the old statute proscribed driving with a BAC of ".10% *or more,*" the new statute reads "with *at least* .10%" (emphasis added).

specific and articulable facts which, taken together with rational inferences from those facts,' reasonably warrant intrusion upon an individual's right of privacy." *Gipson v. State* (1984), Ind., 459 N.E.2d 366, 368 (quoting *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880). If the facts known by the police at the time of the "stop" are such that a man of reasonable caution would believe that the action taken was appropriate, the command of the fourth amendment is satisfied. *Id.* at 368.

■ Of course, the level of suspicion required for a *Terry* stop is less demanding than probable cause. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* at 7, 109 S.Ct. at 1585 (quoting *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)). "In evaluating the validity of a stop such as this, we must consider the 'totality of the circumstances—the whole picture.'" *Id.* 490 U.S. at 8, 109 S.Ct. at 1585 (quoting *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

■ Considering the whole picture, then, the question before us is whether the facts known to Deputy Ruch at the time he stopped Platt's car were sufficient to warrant a man of reasonable caution in the belief that an investigation was appropriate. We believe they were.

The whole picture shows that Deputy Ruch pulled up behind a motorist by the side of a country road in the dead of night. The motorist immediately fled—with great haste—before the deputy even had a chance to get out of his car and see what was going on. These facts alone were sufficient to give rise to a reasonable suspicion in the mind of a trained police officer that some further investigation was warranted.

Flight at the sight of police is undeniably suspicious behavior. As the Supreme Court of Wisconsin has noted, "suspicious conduct by its very nature is ambiguous, and the principle function of the investigative stop is to quickly resolve that ambiguity." *State v. Anderson*, 155 Wis.2d 77, 84, 454 N.W.2d 763, 766 (1990). Deputy Ruch was attempting to resolve the ambiguity created by Platt's suspicious behavior when he temporarily detained him. We will not proscribe such a reasonable response to an inherently suspicious activity. Indeed, the citizens of Whitley County would not have been well served had Ruch ignored his common sense reaction in the face of Platt's abrupt departure and allowed him to ramble down the highway with a BAC that turned out to be nearly two times the legal limit.

This conclusion finds precedent elsewhere. In *United States v. Pope*, 561 F.2d 663 (6th Cir.1977), the sixth circuit approved an investigatory stop of an airline passenger fitting a drug courier profile who fled when drug enforcement agents approached him in an airport terminal and displayed their credentials. The court said:

Appellant's flight in the face of a clear showing of lawful authority supplied the agent with grounds to reasonably suspect that Appellant was engaged in criminal activity. *Flight invites pursuit and colors conduct which hitherto has appeared innocent* ... [F]light from a clearly identified law enforcement officer may furnish sufficient ground for a limited investigative stop.

*Id.* at 668–669 (emphasis added). *See also United States v. Jackson*, 741 F.2d 223, 224 (8th Cir.1984) (stop upheld when police on routine patrol drove into an alley and observed two men flee while yelling, "'It's the police, man, run.'"); *People v. Tribett*, 98 Ill.App.3d 663, 672, 53 Ill.Dec. 897, 903, 424 N.E.2d 688, 694 (1981) (stop upheld when man darted into an alley after observing police car ten or twenty feet away; "[f]rom the officer's viewpoint defendant's conduct at 10:30 p.m. was at least reasonably suspicious to justify an inquiry into his sudden flight."); *Michigan v. Chesternut*, 486 U.S. 567, 576, 108 S.Ct. 1975, 1981, 100 L.Ed.2d 565 (1988) (Kennedy, J., concurring) ("respondent's unprovoked flight gave the police ample cause to stop him").

The Wisconsin Supreme Court's opinion in *Anderson*, 454 N.W.2d 763, is most persuasive. It stressed that the fundamental focus of the fourth amendment is reasonableness. "The question of what constitutes reasonableness is a common sense test. What is reasonable under the circumstances? What would a reasonable police officer reasonably suspect in light of his or her training and experience? What should a reasonable police officer do?" *Id.*, 454 N.W.2d at 766. We conclude that common sense dictates and supports Deputy Ruch's response to Platt's actions. He did what a reasonable police officer should do.

While we have cited precedent on point from other jurisdictions, we hasten to add that our holding today is not inconsistent with recent Indiana decisions in this area. In *Hailey v. State* (1988), Ind., 521 N.E.2d 1318, this Court approved an investigatory stop where a police officer observed the defendant walking in downtown Evansville at 1:30 a.m., saw that he was acting suspiciously, and that he changed direction and increased his speed after noticing the officer. While this author dissented in *Hailey*, the majority held otherwise. Moreover, Platt's conduct in the instant case was far more suspicious, and could more fairly be characterized as flight in the eyes of an investigating officer.

 Such rulings do not give police carte blanche to make arbitrary or capricious stops. Nor do they alter what constitutes *probable cause*. Deputy Ruch's reasonable suspicion rose to the level of probable cause only after he found Platt behind the wheel and detected alcohol on his breath. As the Wisconsin court said in *Anderson*, "the temporary stop we authorize is just that: temporary. It is not, without more, an arrest with all the rights the police have attendant to an arrest. It is the right to temporarily freeze the situation in order to make investigative inquiry." 454 N.W.2d at 768. That is all.

We reject Platt's fourth amendment claim. We now turn to the remainder of Platt's claims left undecided by the Court of Appeals after it found the fourth amendment issue dispositive.

## II. Sufficiency of Evidence

Platt contends the evidence was insufficient to support the verdict of guilty on both charges, driving while intoxicated and driving with a BAC of .10% or more. We disagree.

 When sufficiency of evidence is raised on appeal, this Court will neither reweigh the evidence nor judge the credibility of the witnesses. *Meredith v. State* (1987), Ind., 503 N.E.2d 880. We examine only the evidence most favorable to the jury's verdict. If there is substantial evidence of probative value to support the jury's conclusion that the defendant is guilty beyond a reasonable doubt, we will affirm the conviction. *Id.*

 The evidence most favorable to the verdict includes the following: Deputy Ruch saw Platt driving at about 3 a.m. Platt continued to drive for about a quarter-mile while Ruch followed him with his overhead lights flashing. Ruch smelled alcohol on Platt's breath. Platt's eyes were bloodshot. An Intoxilyzer test at 3:33 a.m. revealed a BAC of .17%. The jury viewed a videotape showing Platt's inability to complete field sobriety tests as directed. There was also evidence that Platt was confused about the time. Around 4 a.m., Platt waived his rights and agreed to answer questions. Platt admitted he had been drinking, that he had consumed three or four beers, and that he had started drinking about "an hour and a half ago." (Record at 285). When Deputy Ruch asked what time that was, Platt replied, "It would be around 7:30." Record at 285.

"Intoxicated" means under the influence of (1) alcohol; (2) a controlled substance; (3) a drug other than alcohol or a controlled substance; or (4) a combination of alcohol, controlled substances, or drugs; so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person. Ind.Code § 9–11–1–5.

(West Supp.1988).[2] The jury found that Platt's condition met the statutory definition of intoxication and that he drove while in such a state. The evidence summarized above was more than adequate to support these conclusions.

Platt also argues that the State failed to establish his blood alcohol content by weight *at the time he was driving*. This argument, too, is without merit. The statutes clearly establish a *presumption* that a person charged with drunken driving had at least .10% BAC *when he was driving*, provided 1) the person's BAC was at least .10% when the test was conducted and 2) the test was performed *within three hours* after the officer had probable cause to believe the person committed the offense. Ind.Code §§ 9–11–4–15, 9–11–4–2 (West Supp.1988).[3] The presumption, however, is rebuttable.

The evidence shows that Platt's BAC measured .17% only thirty minutes after Deputy Ruch stopped him. Platt offered no evidence to rebut the presumption that he was over .10% at the time of the stop. The argument section in Platt's appellate brief addressing this issue ignores the existence of the statutory presumption and instead seems to argue that, absent an immediate on-site Intoxilyzer test, there will always be reasonable doubt as to a defendant's BAC at the time he was driving.

Platt's quarrel is with the law as it is written, not with the jury's determination that the State met its burden in proving each of the elements as defined by statute. Specifically, Platt challenges the constitutionality of Ind.Code § 9–11–2–1,[4] which makes it a crime to drive with a BAC of .10% or more. Platt claims the statute violates due process and the presumption of innocence.

### III. Constitutionality of Statute

Before briefly addressing Platt's claim, we note that Indiana Appellate Rule 8.3(A)(7) requires that appellant's argument

> shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review.

Platt's brief contains no serious argument regarding the constitutionality of the statute. As for citation to authority, it contains only vague references to the fourteenth amendment of the United States Constitution, and Article 1, Sections 12 and 13 of the Indiana Constitution, without any clear showing of how they are implicated in this case.

Before a statute will be declared repugnant to the constitution, either state or federal, its fatal constitutional defects must be clearly apparent. *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585. Such defects are not clearly apparent here.[5] Platt has waived this contention for failure to present cogent argument.

### IV. Admission of Video Tape

As previously mentioned, the jury viewed a videotape of Platt taking the Intoxilyzer test and attempting to perform field sobriety tests. The tape contained the following statement by Deputy Ruch as he placed Platt under arrest: "Here in Indiana the legal limit when you're legally intoxicated in Indiana is .10. You are over that legal limit. You did test .17. I'm advising you at this time I'm going to place you under arrest for driving while intoxicated." (Record at 280–281).

---

**2.** This statute is now found at Ind.Code § 9–13–2–86 (West Supp.1991), essentially unchanged.

**3.** Ind.Code §§ 9–11–4–15 and 9–11–4–2 are now found at 9–30–6–15 and 9–30–6–2 (West Supp. 1991), respectively.

**4.** Now found at Ind.Code § 9–30–5–1.

**5.** The Court of Appeals addressed a similar challenge to Ind.Code § 9–11–2–1 in *Finney v. State* (1986), Ind.App., 491 N.E.2d 1029, and concluded that it was constitutional.

Platt contends the above statement contained an erroneous statement of law from which the jury could mistakenly infer he was automatically guilty of operating while intoxicated based solely on breath test results. His motion to suppress prior to trial was denied. At trial, the tape was admitted into evidence as follows:

State: At this time, Your Honor, I'd offer state's exhibit eight.

Defense counsel: I have no objection.

Court: I'll show state's exhibit eight admitted. (Record at 255).

After the court admitted the tape, defense counsel told the court, "... I just may object to some of th[e] things that are said on there as far as the test results and ..." The court replied, "Yes. Okay. Yes, I'll show that." (Record at 256.)

The State argues that Platt waived his right to appeal the issue by failing to object properly when the exhibit was offered. The State directs us to *Simpson v. State* (1987), Ind., 506 N.E.2d 473, 474 ("Error in overruling a motion to suppress evidence is not preserved for appellate review unless there is a proper timely and specific objection when the evidence is later offered at trial.") Platt's objection was neither timely, nor specific, though it is clear from the record that the court was aware of the basis for the objection and attempted to satisfy Platt's desire to preserve it for appeal.

Whether the objection was properly preserved is a borderline question we need not address, for the admission of Ruch's statement on the videotape—error or no error—does not merit a new trial. Platt is correct that the officer's statement contained a conclusion of law ("the legal limit when you're legally intoxicated in Indiana is .10"). However, we are hesitant to charge the trial judge with error on this point.

"The admission of photographic evidence is within the discretion of the trial court and reversal will occur only upon a showing of abuse of discretion." *Underwood v. State* (1989), Ind., 535 N.E.2d 507, 516, *cert denied*, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989). "A trial court abuses its discretion only where its ruling is clear-

ly against the logic, facts, and circumstances presented." *Boze v. State* (1987), Ind., 514 N.E.2d 275, 278. Admissibility is dependent on relevancy. *Id.* Clearly, the videotape of Platt's arrest was relevant and admissible. Indeed, Platt did not argue at the suppression hearing that the entire tape should be kept from the jury. Instead, he asked that the audio be turned down during that portion containing Ruch's statement at issue. (Record at 109–110).

The trial court denied denied Platt's motion, saying, "to turn down the tape ... would create more confusion in the minds of the jurors then (sic) for them to hear this statement." (Record at 135). Platt then asked that the jury be admonished to disregard the statement. The court responded,

Well, again after hearing the complete tape and then to admonish them to disregard the statement made by the officer and to repeat the statement, I think the tape is to be viewed and heard as a whole and I'm not going to take out the one sentence and admonish them as to that statement. (Record at 136.)

We are not persuaded that the trial court abused its discretion in its effort to avoid confusing the jury. Furthermore, even if this were error, we believe it would be harmless under the circumstances.

Even assuming error, the narrow question would be whether the jury's verdict was *substantially swayed* by Deputy Ruch's statement that .10 is the legal limit for intoxication. *See Stwalley v. State* (1989), Ind., 534 N.E.2d 229. In light of all the evidence, and the fact that the jury was properly instructed by the court before deliberating, we can say with fair assurance that the jury's verdict was not substantially swayed by the admission of the tape in its entirety.

### V. Admissibility of Documents

Platt next challenges the admission of State's exhibits 1 through 6. These exhibits were offered to 1) establish certification of the breath test operator and of the machine and chemicals, 2) to show that the proper procedure was followed, and 3) to

show the test result itself. Platt also at this point challenges for the first time the admission of the State's exhibit 8, the aforementioned videotape of his test and arrest. He objects to all seven exhibits as hearsay, the admission of which denied him his constitutional right to confront and cross-examine his accuser.

State's exhibit 1 is a certified check list for the approved method of conducting an Intoxilyzer breath test. State's exhibit 2 is a certified letter identifying David E. Morris as a certified chemical test operator. (Morris is the officer who administered the test to Platt). State's exhibits 3 and 4 are certified documents showing that the equipment and chemicals on hand in Whitley County had been inspected and tested, and the dates on which those inspections and tests occurred. State's exhibit 5 is a completed version of State's exhibit 1, filled out by Officer Morris as the Intoxilyzer test was administered. State's exhibit 6 is the print-out showing Platt's BAC of .17.

State's exhibits 1 through 4 were admissible under Ind.Code § 9–11–4–5 (West Supp.1988).[6] State's exhibit 5 was properly authenticated by Officer Morris. And because the requirements of Ind.Code § 9–11–4–5 were met (that the operator, equipment, chemicals and technique had all been approved in accordance with the regulations), the test result, exhibit 6, was also properly admitted.

Platt offers nothing specific about why State's exhibits 5 and 6 should have been excluded. Nor does he explain why the videotape should have been excluded when he had no objection to its admission at trial (save for his attempts to have the audio turned down at one point). As to exhibits 1 through 4, Platt argues that he was denied his rights to cross-examination and confrontation because the state did not present those persons who inspected and certified the Intoxilyzer machine and its chemicals.

The legislature has fashioned an inspection and certification scheme[7] to insure the reliability of test results, thereby protecting the rights of the accused, while at the same time streamlining the trial process. Legislation under constitutional attack is clothed in a presumption of constitutionality. *Miller v. State* (1987), Ind., 517 N.E.2d 64, 71. As we said earlier, for a statute to be declared unconstitutional, its fatal defects must be clear. None are apparent in Ind.Code § 9–11–4–5. Platt was not deprived of his confrontation rights. He had the opportunity to confront his accuser face-to-face. It was Deputy Ruch. The alternative would be to have a toxicologist in every courthouse every day giving testimony concerning his or her actual inspection of a particular Intoxilyzer machine, and his or her certification of the officer as a competent administrator of the test.

### VI. Jury Instructions

Platt claims the trial court erred in giving the following two final instructions to the jury over his objection:

"Prima facie evidence of intoxication" includes evidence that at the time of an alleged violation there was ten-hundredths percent (.10%), or more, by weight of alcohol in the person's blood; and:

(a) At any proceeding concerning an offense under IC 9–11–2, evidence of the amount by weight of alcohol that was in the blood of the person charged with the offense:

(1) At the time of the alleged violation; or

---

**6.** Now found at Ind.Code § 9–30–6–5 (West Supp.1991). For a more detailed discussion on the admissibility of documents certifying inspection of breath test machines, see *Hatch v. State* (1989), Ind.App., 547 N.E.2d 276.

**7.** Ind.Code § 9–11–4–5 (West Supp.1988), now found at § 9–30–6–5 (West Supp.1991), directs the department of toxicology of the Indiana University school of medicine to adopt rules under Ind.Code § 4–22–2 concerning breath test operators and equipment, and provides for the admissibility of certified documents in lieu of live testimony to prove the machines are in working order and the operators are sufficiently trained to use them. The regulations promulgated pursuant to Ind.Code §§ 9–11–4–5 and 4–22–2 are found at 260 IAC 1.1.

(2) Within the period of time allowed for testing under section 2 (IC 9–11–4–2) of this chapter; as shown by an analysis of the person's breath, blood, urine, or other bodily substance, is admissible.

(b) If, in a prosecution for an offense under IC 9–11–2, evidence establishes that:

(1) A chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and

(2) The person charged with the offense had at least ten hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the test sample was taken;

the trier of fact shall presume that the person charged with the offense had at least ten-hundredths percent (0.10%) by weight of alcohol in the person's blood at the time the person operated the vehicle. However, this presumption is rebuttable. (Record at 66, 79.)

Both instructions are accurate statements of the law, tracking Ind.Code §§ 9–11–1–7 and 9–11–4–15 (West Supp.1988), respectively.[8] Hence, there was no error in reading them to the jury. Platt claims the law unconstitutionally shifts the burden of proof away from the State, effectively requiring him to prove his innocence. The Court of Appeals rejected an identical claim of constitutional defect in *Chilcutt v. State* (1989), Ind.App., 544 N.E.2d 856, *trans. denied.* We see no reason to revisit the issue today. There was no error here.

### VII. Verdict Forms

■ Finally, Platt claims the jury was provided verdict forms which foreclosed the possibility of finding him not guilty of both charges. The record does not support his claim.

The trial court furnished the jury with four different verdict forms, covering each

of the possible verdicts.[9] The fourth and final verdict form read: "We, the Jury, find the defendant, Jimmy D. Platt, not guilty." (Supplemental Record at 5).

We fail to see the logic in Platt's argument. It seems obvious to us that a "not guilty" verdict would cover both charges. The fact that the fourth verdict form did not list each of the charges separately did not prejudice Platt and is hardly reason for a new trial.

We vacate the decision of the Court of Appeals and affirm the judgment of the trial court.

GIVAN, KRAHULIK, and DICKSON, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The majority and the cases from other jurisdictions upon which it relies and by which it is persuaded, eschew a dispassionate statement of the applicable federal constitutional standard and are thereby drawn into federal constitutional incorrectness. When Deputy Sheriff Ruch followed this car as it took off down the road, activated his red overhead lights and pulled it off to the side of the road, a seizure implicating the protections of the fourth amendment occurred. *Michigan v. Chesternut* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). In order for this sort of seizure or intrusion into privacy to be justified, the detaining officers must, from a totality of the circumstances, "have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981). Here there was no such required basis. It is perfectly lawful to park along a roadside at 3:00 in the morning. And it was perfectly lawful for appellant to drive

---

8. Now found at Ind.Code §§ 9–13–2–131 and 9–30–6–15 (West Supp.1991).

9. The four possibilities were: 1) guilty of operating a motor vehicle while intoxicated and guilty of operating with a BAC of .10% or more; 2) not guilty of operating while intoxicated and guilty of operating with a BAC of .10% or more; 3) guilty of operating while intoxicated and not guilty of operating with a BAC of .10% or more; and 4) not guilty.

away from his spot after the sheriff's car stopped behind him. Ruch provided his reason for pulling in behind the parked car:

"Our, our curiosity is up because we want to know if anybody's in trouble or whether the vehicle's been abandoned or, or whatever."

Ruch then described what happened next:

"The vehicle went away in a, in a bit of a hurry and it threw the stones, the tires threw the stones, left marks in the, in the gravel as it took off."

Ruch then activated his red lights, pulled out, followed the car and stopped it within a quarter mile. He did so on the following basis.

"At that point I thought it was a bit suspicious, so I ..."

No intrusion requiring justification occurred when the deputy pulled in and parked behind appellant's car, and none would have occurred if the deputy would have simply followed the car and observed it in operation as it moved off. However, the immediate activation of the red lights, the chase, and the stop of the car and its occupant required a particularized and objective basis for suspecting that the driver was engaged in criminal activity. This deputy had no such particularized suspicion, and his seizure was therefore not constitutionally justified. The trial court was therefore in error in refusing to suppress the fruits of this illegal seizure.