ATTORNEY FOR APPELLANT
Jerry T. Drook
Marion, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court



FILED
Jun 22 2016, 9:06 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

No. 27S05-1603-CR-115

DANNIE CARL PATTISON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Grant County Superior Court, No. 27D03-1303-FD-110
The Honorable Warren Haas, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 27A05-1411-CR-517

**June 22, 2016**

**Massa, Justice.**

At Dannie Pattison's trial for operating a vehicle with an alcohol concentration equivalent of 0.08 or more, his jury was instructed to presume his ACE at the time of the offense based on a chemical test conducted within three of hours of his being stopped by police. Tracking the language of Indiana Code section 9-30-6-15(b), the instruction told the jury it "shall presume," yet also stated, "the presumption is rebuttable." We are asked to decide whether that instruction improperly relieved the State of its burden to prove each element beyond a reasonable doubt,

amounting to fundamental error. Finding no error in the trial court's instruction, we affirm Pattison's conviction.

## Facts and Procedural History

Sometime after midnight, Jonesboro Police Officer Justin Chambers noticed a white Cadillac driving along a county road without its taillights on. Officer Chambers turned on his emergency lights and siren, and the Cadillac's driver, Dannie Pattison, eventually pulled into his driveway and stopped the car. While issuing a traffic citation for Pattison's inoperable taillights, Officer Chambers observed Pattison's watery eyes, slurred speech, and odor of alcohol. Pattison admitted he consumed "a couple of beers," later stating he'd actually had three. Tr. at 12. Indeed, the horizontal gaze nystagmus test[1] indicated impairment, and the portable breathalyzer tested positive for alcohol. After being advised of the implied consent law, Pattison agreed to take a certified chemical test. Officer Chambers initially took Pattison to the Gas City Police Department due to its close proximity, but no one trained in operating the BAC DataMaster[2] was available to perform the certified chemical test. So, they went to the Grant County Sheriff's Department where trained Officer Dillon McDaniel conducted it: about an hour and a half after Pattison was pulled

---

[1] This field sobriety test detects impairment by looking for an involuntary jerking of the eyeball when an individual is asked to focus on an object, usually a pen, as it is gradually moved out of his or her field of vision. O'Banion v. State, 789 N.E.2d 516, 518 (Ind. Ct. App. 2003).

[2] The BAC DataMaster is a scientific instrument that uses infrared technology to analyze a breath sample in order to determine a person's ACE. Ind. State Dep't of Toxicology, Chemical Tests for Intoxication: Breath Test Operator Training Course 29–30 (Jan. 2013), http://www.in.gov/isdt/files/BT_Training _Course_Materials_01-28-13.pdf. In late 2014—after Pattison's crime—our Department of Toxicology replaced the DataMasters around the state with a new instrument called the Intox EC/IR II. See Ind. State Dep't of Toxicology, Training/Deployment Intox EC/IR II, http://www.in.gov/isdt/2459.htm (last visited June 21, 2016). In any event, the Department is responsible for servicing these instruments, 260 Ind. Admin. Code 2-3-2, -3, as well as training and certifying the individuals who operate them. Ind. Code § 9-30-6-5 (2010); 260 Ind. Admin. Code 2-2-2 to -4.

over, his alcohol concentration equivalent was 0.10. Pattison was charged with operating a vehicle with an ACE of 0.08 or more. Ind. Code § 9-30-5-1(a).

At trial, the State admitted evidence of the chemical test results, and Chambers, as well as another responding officer, testified as to their observations during the stop. In his defense, Pattison offered evidence that he could not drink due to several health conditions—including liver failure—and that he in fact did not drink that night. He theorized his test results may have been skewed because he used his inhaler several times that night while he was in the police car, although the officers did not see him use an inhaler, nor did they find one during their search of him.

A jury found Pattison guilty as charged, a Class D felony due to a prior conviction,[3] and the trial court sentenced him to three years.[4]

On appeal, Pattison challenged the following jury instruction:

### 6. Rebuttable Presumption

If in a prosecution for operating a vehicle with at least eight hundredths (0.08) gram of alcohol in 210 liters of the breath, if evidence establishes that:

- a chemical test was performed within three (3) hours after the law enforcement officer had probable cause to believe the person committed the crime; and

- the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per two hundred ten (210) liters of the person's breath;

---

[3] In a bifurcated proceeding, the State introduced Pattison's 2009 conviction for operating a vehicle while intoxicated, making what would otherwise be a Class C misdemeanor instead a Class D felony. Ind. Code § 9-30-5-3.

[4] In imposing the sentence, the trial court considered the fact that Pattison has eight previous convictions for varied drinking and driving offenses, making this one his ninth.

the jury shall presume that the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, the presumption is rebuttable.

Tr. at 205; App. at 33. Although Pattison did not object to the instruction at trial, he argued below that it amounted to fundamental error because it unconstitutionally shifted the burden to him to disprove an element of the crime—his ACE at the time of the offense—in violation of the Due Process Clause. Pattison insisted the jury must be instructed that it is free to accept or reject the presumption.

A unanimous panel of our Court of Appeals agreed with Pattison and reversed his conviction, finding the instruction did not make clear the presumption was merely permissible. Pattison v. State, 47 N.E.3d 621, 628 (Ind. Ct. App. 2015). The panel acknowledged Instruction 6 closely mirrors the language of Indiana Code section 9-30-6-15(b),[5] which was upheld as constitutional in Chilcutt v. State because the State was still required to prove every element beyond a reasonable doubt, which it quite clearly did in that case. Id. at 625–26 (citing Chilcutt v.

---

[5] The statute creating the presumption of Instruction 6 reads:

> If, in a prosecution for an offense under IC 9-30-5, evidence establishes that:
> (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
> (2) the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
>> (A) one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
>> (B) two hundred ten (210) liters of the person's breath;
> the trier of fact shall presume that the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, this presumption is rebuttable.

Ind. Code § 9-30-6-15(b).

State, 544 N.E.2d 856, 858 (Ind. Ct. App. 1989)). Nevertheless, the panel here ultimately relied upon subsequent Court of Appeals precedent that found a jury instruction erroneous even though it was based on that very statute, because the phrase "shall presume" could mislead the jury into believing the presumption was a mandatory one that placed the burden on the defendant to prove his ACE. Id. at 626–27 (citing Hall v. State, 560 N.E.2d 561, 564 (Ind. Ct. App. 1990)). Because the panel determined Pattison's instruction was essentially the same as that in Hall, it found there was error. Id. at 627. And, because the instruction shifted the burden of proof on the only contested element of the crime, it held that constitutional error was not harmless. Id. at 628.

The State sought transfer on the grounds that this Court has found similar jury instructions, which likewise tracked the language of this statute, "were innocuous and not error at all—much less fundamental error." Pet. for Trans. at 6 (citing Smith v. State, 681 N.E.2d 687 (Ind. 1997) and Platt v. State, 589 N.E.2d 222 (Ind. 1992)). The State also argued that, even if the instruction was erroneous, the Court of Appeals improperly "conflated the standards" for analyzing harmful versus fundamental errors. Pet. for Trans. at 14. We granted the State's petition, thereby vacating the opinion below. Pattison v. State, 46 N.E.3d 445 (Ind. 2016) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

Because instructing the jury is a matter within the sound discretion of the trial court, we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion. Washington v. State, 997 N.E.2d 342, 345 (Ind. 2013). We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions. Id. at 345–46. "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case." Whitney v. State, 750 N.E.2d 342, 344 (Ind. 2001) (quoting Edgecomb v. State, 673 N.E.2d 1185, 1196 (Ind. 1996)).

5

Where, as here, the defendant failed to preserve an alleged instructional defect, the objection is waived, and reversal is warranted only in instances of fundamental error. Wright v. State, 730 N.E.2d 713, 716 (Ind. 2000). "Error is fundamental if it is 'a substantial blatant violation of basic principles' and where, if not corrected, it would deny a defendant fundamental due process." Id. (quoting Brown v. State, 691 N.E.2d 438, 444 (Ind. 1998)). This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in "egregious circumstances" that made a fair trial impossible. Halliburton v. State, 1 N.E.3d 670, 678 (Ind. 2013).

### The Trial Court's Instruction Was Not Error.

Pattison argues Instruction 6 improperly shifted the burden of proof because it created a "mandatory presumption" by instructing the jury it "shall presume" an element of the crime: his alcohol concentration equivalent while driving. Appellant's Br. at 10. He says the trial court should have advised the jury the presumption was merely permissive; in other words, the jury could accept or reject the presumption even in the absence of evidence to rebut it. The State concedes Pattison may well have been entitled to such language, but it nevertheless responds that the instruction is proper in light of Platt and Chilcutt, which determined the instruction did not "create a conclusive presumption," but a rebuttable one. Pet. for Trans. at 13.

The Due Process Clause prohibits the State from relying upon an evidentiary presumption that has the effect of relieving it of its burden to prove every essential element of a crime beyond a reasonable doubt. Sandstrom v. Montana, 442 U.S. 510, 524 (1979); McCorker v. State, 797 N.E.2d 257, 263 (Ind. 2003). As a threshold matter, we must first determine whether the challenged instruction creates a mandatory presumption or merely a permissive inference. Francis v. Franklin, 471 U.S. 307, 313–14 (1985). "A mandatory presumption instructs the jury that it *must* infer the presumed facts if the State proves certain predicate facts." Winegeart v. State, 665 N.E.2d 893, 904 (Ind. 1996) (emphasis added). If that presumption amounts to a shift in the burden

6

of proof, it is unconstitutional. Francis, 471 U.S. at 315–16.[6] Such was the outcome in Francis, where the defendant shot and killed a man but claimed the firing of the gun was accidental, making intent the only disputed issue at trial. Id. at 310–11. The jury was instructed to presume that the acts of a person of sound mind are the product of his will. Id. at 311–12. Because that instruction "direct[ed] the jury to presume an essential element of the offense—intent to kill—upon proof of other elements of the offense—the act of slaying another" unless the defendant could persuade the jury otherwise, the Supreme Court found it offended the Due Process Clause. Id. at 316.

Here, Instruction 6 tells jurors they "shall" presume, App. at 33, making it a mandatory presumption. A mandatory presumption may be either conclusive or rebuttable: if it is conclusive, the presumption is satisfied once the State proves the predicate facts; if it is rebuttable, the defendant may produce evidence to persuade the jury to reject the presumption. Francis, 471 U.S. at 314 n.2. Instruction 6 explicitly tells jurors the presumption is rebuttable. Jurors would thus reasonably interpret the instruction to mean they must presume Pattison's ACE while driving was more than 0.08 if the State proves his ACE was more than 0.08 within three hours of stopping him, but Pattison could offer evidence leading them to reject that finding. More precisely, then, today we are confronted with a mandatory rebuttable presumption.

We next assess the effect of the mandatory rebuttable presumption, asking: does the instruction effectively shift the burden from the State to the defendant to disprove an element of the crime? Our Court of Appeals has wrestled with answering this question on several occasions. In Chilcutt, the court upheld the predecessor to the statute[7] that serves as the basis for Instruction

---

[6] In contrast, a permissive inference "still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate facts proved." Francis, 471 U.S. at 314. It is unconstitutional "*only if* the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." Id. at 314–15 (emphasis added).

[7] Indiana Code section 9-11-4-15, upheld in Chilcutt, has been recodified at Indiana Code section 9-30-6-15. Finney v. State, 686 N.E.2d 133, 135 (Ind. Ct. App. 1997).

6, finding that because the presumption could be rebutted and because there was a rational connection between the fact proved (ACE at the time of the chemical test) and the fact presumed (ACE at the time of driving, provided it is within three hours of the test), the presumption did "not affect the burden of proof, but shift[ed] the burden of going forward with evidence to the defendant." 544 N.E.2d 856, 858 (Ind. Ct. App. 1989). The defendant could—and indeed there, did—present evidence of post-driving consumption of alcohol, but he appropriately and constitutionally bore the burden to prove that affirmative defense. Id.

One year later, while transfer was still pending in Chilcutt, the Court of Appeals considered a jury instruction that paralleled the statute. Hall v. State, 560 N.E.2d 561, 562 (Ind. Ct. App. 1990). While the panel acknowledged that "[t]he language contained in the instruction does not create a conclusive presumption nor shift the burden of proof to the defendant," it nevertheless found the instruction erroneous because it led the jury to believe the presumption was mandatory and not permissive. Id. at 563–64. In other words, despite its faith to the statutory language, the instruction required reversal because it failed to advise the jury that it "may accept or reject [the presumption] and is not compelled to find the presumed fact even if the defendant does not come forward with evidence to rebut the presumption." Id. at 563. The next year, our Court of Appeals decided Sturgeon v. State, which similarly considered a jury instruction on this presumption, but its language departed from the statute "in that nowhere in the challenged instruction or the charge as a whole [did] the court inform the jury that the presumption of [ACE] at the time of operation [was] rebuttable. Unlike the instruction given in Hall, the presumption created by this instruction [was] therefore conclusive as well as mandatory." 575 N.E.2d 679, 681 (Ind. Ct. App. 1991). The Sturgeon instruction thus unconstitutionally shifted the burden of proof; finding that error was not harmless, the panel reversed. Id. at 683.

In 1992, this Court weighed in, determining the instruction containing the statutory presumption was proper because it accurately stated the law, which was found to be constitutionally permissible in Chilcutt. Platt v. State, 589 N.E.2d 222, 230–31 (Ind. 1992). Although we resolved the issue in only six sentences, we find our decision in Platt—and not the Court of Appeals' earlier decision in Hall—still carries the day today. Cf. Smith v. State, 681

8

N.E.2d 687, 688 (Ind. 1997) ("[T]he trial court did not err in instructing the jury that it could relate the results of Smith's blood alcohol test back to the time he operated the vehicle if the jury found the test was given within three hours of that time.").

Instructing the jury as to a mandatory rebuttable presumption in a criminal case does not amount to automatic error; instead, such an instruction may be constitutionally sound so long as it maintains the State's obligation to prove every element beyond a reasonable doubt. Francis, 471 U.S. at 314, 316. Here, the disputed element the State must prove beyond a reasonable doubt is that Pattison operated a vehicle *with* an ACE of at least 0.08. Ind. Code § 9-30-5-1. Pursuant to Instruction 6's presumption, the State is still required to prove—through a certified chemical test performed by an authorized operator—the ACE of the defendant *within three hours* of the stop. By giving the State a three-hour window to perform and rely upon the certified examination, is its burden lifted? We determine the answer is no.

The presumption of Instruction 6 does not relieve the State of its obligation to prove Pattison's ACE, but merely negates the need for live testimony explaining retrograde extrapolation[8] as a method to estimate his ACE at the time of driving. By way of background, in 1986 our Court of Appeals found that where the State admitted chemical test results but presented "no evidence relating this figure back to the time of the offense," it failed to prove the defendant's ACE while driving. Smith v. State, 502 N.E.2d 122, 127 (Ind. Ct. App. 1986) ("In order to show blood alcohol content at the time of the offense, the State must present evidence extrapolating back from the time of the test."). The following year, our General Assembly passed the statutory presumption, "crafted in direct response to Smith," eliminating the need for the State to present an

---

[8] "Retrograde extrapolation represents the technique through which experts estimate alcohol concentration at some earlier time based on the test results at some later time." State v. McGowan, 2006 MT 163, ¶ 18, 332 Mont. 490, 495, 139 P.3d 841, 845.

expert at every trial to explain how alcohol metabolizes in the bloodstream. Jarrell v. State, 852 N.E.2d 1022, 1028–29 (Ind. Ct. App. 2006).

This approach makes pragmatic and scientific sense. Unfortunately, across the Hoosier state, tens of thousands of people are stopped each year for endangering lives by operating a vehicle after drinking.[9] The costs of an expert at every trial would be exorbitant, and in any event, such experts may not even be able to construct an accurate extrapolation because much of the required information—specifically, when, how much, and what type of alcohol, as well as food, the defendant consumed—is exclusively within the defendant's possession, placing an "impossible burden upon the State." Commonwealth v. Colturi, 864 N.E.2d 498, 502–03 (Mass. 2007) (quoting State v. Taylor, 566 A.2d 172, 175–76 (N.H. 1989)); see also Smith, 502 N.E.2d at 127 n.5 ("[W]e are troubled by the fact that the evidence necessary for proper extrapolation will in many cases be solely in the hands of the defendant."). Furthermore, the rate of alcohol absorption can vary widely among different people. Mata v. State, 46 S.W.3d 902, 911 (Tex. Crim. App. 2001) (en banc) (citing Alan Jones, Kjell-Ake Jönsson, & Aldo Neri, Peak Blood-Ethanol Concentration and the Time of Its Occurrence After Rapid Drinking on an Empty Stomach, 36 J. of Forensic Sciences 376, 381 (Mar. 1991)), overruled on other grounds by Bagheri v. State, 87 S.W.3d 657, 660–61 (Tex. Ct. App. 2002).[10]

---

[9] During 2013, for instance, the DUI Task Force issued 42,750 citations related to drinking and driving. Ind. Criminal Justice Inst., Indiana's Annual Traffic Safety Report 20 (Dec. 20, 2013). Tragically, that same year, 221 people died as a result of collisions involving an alcohol-impaired driver. Id. at 18.

[10] In Mata, the Texas Court of Criminal Appeals evaluated the reliability of retrograde extrapolation techniques for purposes of admissibility, and in doing so extensively reviewed the scientific literature in this area. Mata, 46 S.W. at 908–17; Lawrence E. Wines, The Law and Science of Retrograde Extrapolation in Inside the Minds: Understanding DUI Scientific Evidence 7, 18 (2010) (describing Mata as "The Leading Retrograde Extrapolation Case").

Although there is generally a short window in which an individual's ACE curves up until equilibrium is reached between absorption and elimination,[11] that curve then slopes down as the body slowly and consistently eliminates alcohol faster than it absorbs it.  Mata, 46 S.W.3d at 909.  And, we refuse to hold the State responsible for disproving the possibility that a defendant's ACE was still increasing while he was driving, as we agree with other state courts that have found: "The law was not intended to encourage a perilous race to reach one's destination, whether it be home or the next bar, before the blood alcohol concentration reaches the prohibited level." Haas v. State, 597 So. 2d 770, 773–74 (Fla. 1992) (quoting State v. Tischio, 527 A.2d 388, 396 (N.J. 1987)).  Moreover, we find the concern about a delayed peak ACE unpersuasive because the arresting officer must first have probable cause to believe the defendant has an unlawful ACE behind the wheel before detaining that individual to be tested.[12]   Ind. Code § 9-30-6-2.

Because the presumption is rebuttable, a defendant is free to present evidence in his defense.  For instance, he could show he consumed alcohol *after* driving.  Chilcutt, 544 N.E.2d at 858.  Or, he could posit another theory, as Pattison did here, that the test results were due to his inhaler use, a supposition his jury heard and rejected.  Thus, whereas the mandatory rebuttable presumption of Francis merged two elements of the crime by allowing the defendant's actus reus to serve as proof of the requisite mens rea, here the State must still show the defendant's ACE (indeed, through rigid testing requirements) but is merely relieved of the need to re-litigate the ACE's extrapolation across time for every such case of operating a vehicle with an ACE over 0.08.

---

[11] The time that must elapse for an individual to reach his "peak" ACE depends on several variables; one study, however, found the mode of its subjects reached their peak between 5 and 15 minutes after the end of drinking, 77% of subjects reached their peak within 45 minutes after the end of drinking, and 92% within 75 minutes after drinking.  Jones et al., supra, at 378–79.

[12] Indeed, here Officer Chambers observed physical signs of alcohol use upon pulling over Pattison's car.  And, it appears his ACE *did* decline prior to the certified test.  Pattison's preliminary breath test, given contemporaneous with the 1:41 a.m. traffic stop, yielded a result of 0.12.  By the time he got to the Grant County Sheriff's Department at 3:03 a.m., the DataMaster indicated a lower ACE of 0.10.

Instead, it is the defendant who bears the burden of coming forward with facts—generally already in his possession—that amount to an affirmative defense.

Considering the scientific context of the statute creating the presumption, we maintain that our "legislature has fashioned an inspection and certification scheme to insure the reliability of test results, thereby protecting the rights of the accused, while at the same time streamlining the trial process." Platt, 589 N.E.2d at 230; see also State v. Greenwood, 115 S.W.3d 527, 532 (Tenn. Crim. App. 2003) ("The legislature obviously knew a blood alcohol test could not be conducted while the defendant was driving. We do not believe it intended to place upon the state the impossible burden of extrapolation in order to prove DUI."). We decline to find this reasonable approach destroys a defendant's right to due process.[13]

**Conclusion**

Because Instruction 6 did not shift the State's burden of proof, we see no error, let alone error so fundamental as to preclude a fair trial. We thus affirm.

Rush, C.J., and Rucker, David, and Slaughter, JJ., concur.

---

[13] As we resolve this case by finding no error in the instruction, we need not address the State's concerns about applying the standards for harmful and fundamental errors.