Hossein **BAGHERI**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–00–00551–CR.

Court of Appeals of Texas,
San Antonio.

June 28, 2002.

---

George Scharmen, San Antonio, for appellant.

Scott Roberts, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: SARAH B. DUNCAN, Justice.

Hossein Bagheri was convicted of driving while intoxicated. On appeal he con-

tends the trial court erred in admitting testimony regarding a retrograde extrapolation of the intoxilyzer test result. The State has confessed error, admitting that the facts here are no better than they were in *Mata v. State*, 46 S.W.3d 902 (Tex.Crim. App.2001), in which the Texas Court of Criminal Appeals concluded the trial court abused its discretion in admitting a retrograde extrapolation by the same witness who testified in this case. *Id.* at 917.

In keeping with our prior opinions in *Hartman v. State*, 2 S.W.3d 490, 494 (Tex. App.-San Antonio 1999, pet. ref'd), and *Mata v. State*, 75 S.W.3d 499, 500–01 (Tex. App.-San Antonio 2002, pet. filed) (not yet published), in which this court held that the error was harmless because the evidence was sufficient to support conviction under the alternate impairment theory, the State urges that the error was harmless. On our own initiative, we have reconsidered the harm issue *en banc* and now hold that the sufficiency of the evidence under the alternate impairment theory is irrelevant; it does not establish that the error in admitting the flawed retrograde extrapolation analysis was harmless. We therefore overrule *Mata* and *Hartman* to the extent of the conflict and reverse the trial court's judgment and remand the cause for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

Bagheri was arrested at approximately 2:30 a.m. by Officer Randall McCumbers after McCumbers observed Bagheri's vehicle traveling at approximately 70 m.p.h., veer onto the inside shoulder of the road on two occasions, and, increasing his speed to approximately 85 m.p.h., move across three lanes of traffic without signaling. After Bagheri was stopped, McCumbers noticed that his speech was slurred, his breath smelled of alcohol, and his eyes were red and glassy. Bagheri seemed confused and stumbled when he exited his car; and he appeared unsteady as he walked to the rear of his car. Field sobriety tests indicated to McCumbers that Bagheri was driving while intoxicated. Intoxilyzer tests revealed Bagheri's blood alcohol level to be 0.113 at 3:34 a.m. and 0.107 at 3:37 a.m. At trial George Allen McDougall, Jr., Bexar County's breath test technical supervisor, testified that these intoxilyzer test results established that Bagheri's blood alcohol level was 0.10 or more at the time of the stop using a retrograde extrapolation.

The court's charge asked the jury to find whether Bagheri was guilty of the offense of driving while intoxicated and instructed the jury that a person is deemed to be intoxicated while driving within the meaning of the law if: (1) he does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into the body; or (2) he has an alcohol concentration of 0.10 percent or more. The jury found Bagheri guilty; and he was sentenced to eight months in jail, probated for 120 days, and fined $1500.

### APPLICABLE LAW

Because the error of which Bagheri complains is nonconstitutional, we must disregard it unless it affected his "substantial rights." TEX.R.APP. P. 44.2(b). "[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect.'" *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App.2001). Stated another way, "[t]he accused's substantial rights are not affected unless there is a reasonable possibility that the errors are prejudicial; i.e., that they 'might have contributed' to the defendant's conviction." *Hinds v. State*, 970 S.W.2d

33, 35 (Tex.App.-Dallas 1998, no pet.) (quoting *United States v. Brown*, 897 F.2d 162, 163 (5th Cir.1990)). Among the facts to be considered are whether the evidence was cumulative and whether it was elicited from an expert. *See Solomon*, 49 S.W.3d at 365.

## DISCUSSION

 The State argues the error in admitting the retrograde extrapolation was harmless because the court's charge submitted both the "per se" and "impairment" theories of intoxication; and the jury may have convicted Bagheri based on the impairment theory, which is supported by McCumber's testimony and the intoxilyzer test results. The State's argument is supported by our previous opinions in *Mata v. State*, 75 S.W.3d 499, 500–01 (Tex.App.-San Antonio 2002, pet. filed), and *Hartman v. State*, 2 S.W.3d 490, 494 (Tex.App.-San Antonio 1999, pet. ref'd).

Even if we assume the intoxilyzer test results would be admissible in the absence of a retrograde extrapolation tying the results to the time of the stop,[1] or that McCumber's testimony alone would be sufficient to establish intoxication under the impairment theory, the fact remains that the court's charge submitted both theories in a single question. As a result, we do not and cannot know which theory persuaded the jury beyond a reasonable doubt. *Cf. Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex.2000). Without knowing that the jury found Bagheri guilty under the impairment theory, the State's assertion that the evidence is sufficient to support conviction under that theory is simply irrelevant; it in no way leads us to a "fair assurance that the error [in admitting the retrograde extrapolation evidence] did not influence the jury, or had but a slight effect." *See Solomon*, 49 S.W.3d at 365. We therefore hold the sufficiency of the evidence to support conviction under an impairment theory does not alone establish that the error in admitting a flawed

1. Whether the intoxilyzer test results are admissible in the absence of a retrograde extrapolation is a question the Texas Court of Criminal Appeals has expressly left open. *See Mata*, 46 S.W.3d at 910 n. 42 & accompanying text. In its post-submission brief, the State indicates it "frankly ... doesn't see how [the breath test result] is not relevant." Perhaps counsel is not aware that courts in other jurisdictions have recognized that an intoxilyzer test administered an hour or more after the stop does not tend to establish a defendant's blood alcohol level at the time of the stop and is therefore no evidence of the essential element of "per se" intoxication. *See Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229, 1231 (1992) (A blood test performed approximately one hour after stop and indicating a blood alcohol content of 0.114 "was no evidence upon which the expert could offer an opinion as to whether appellant's blood alcohol level was in fact greater than or equal to 0.10% at the time of driving."); *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233, 1235 (1992) (A blood alcohol test performed one hour and fifty minutes after an accident and indicating a blood alcohol content of 0.108 was "no evidence ... appellant's blood alcohol level was greater than or equal to 0.10% at the time of the accident.").

In support of its argument that the test result would be admissible and relevant absent a retrograde extrapolation to establish intoxication under an impairment theory, the State cites *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex.1999), and *Price v. State*, 59 S.W.3d 297 (Tex.App.-Fort Worth, 2001, pet. ref'd). However, neither case analyzes relevance in the context of the established science; both opinions simply rely upon *Forte v. State*, 707 S.W.2d 89, 95 (Tex. Crim.App.1986). But *Forte* predates the entire *Daubert* "revolution" and its application to DWI cases such as *Mata*.

In short, the admissibility and relevance of the intoxilyzer test result in the absence of a retrograde extrapolation has not been authoritatively decided by the Texas Court of Criminal Appeals. We have therefore adopted a harm analysis that renders the issue moot.

retrograde extrapolation analysis was harmless and overrule *Hartman* and *Mata* to the extent of the conflict. We will instead adhere to the harm test enunciated by the Texas Court of Criminal Appeals. *See id.*

After reviewing the record, we cannot conclude that the retrograde extrapolation evidence "did not influence the jury, or had but a slight effect." The retrograde extrapolation evidence was placed before the jury by an expert witness, whom the State touted in closing arguments as having "studied with the leading experts in the field in the United States"; and it was not cumulative of other evidence. We therefore hold the error was not harmless, reverse the trial court's judgment, and remand the cause for a new trial consistent with this opinion.

PHIL HARDBERGER, C.J., concurs.

Concurring opinion by: PHIL HARDBERGER, Chief Justice, joined by ALMA L. LÓPEZ, Justice.

I agree with the majority's conclusion that the admission of McDougall's testimony was harmful for the reasons stated in my earlier dissenting opinion in *Mata v. State,* 75 S.W.3d 499 (Tex.App.-San Antonio 2002, pet. filed) (Hardberger, C.J., dissenting). In *Mata,* the Court of Criminal Appeals held that the trial court erred in admitting McDougall's testimony and remanded the case to our court for a harm analysis. *See Mata v. State,* 46 S.W.3d 902 (Tex.Crim.App.2001). In conducting the harm analysis, my dissent asserts that we should use an analysis similar to that used by the Texas Supreme Court in *Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000). The reason is simple enough. If a jury is given both admissible

and inadmissible testimony, which did they rely upon in reaching their verdict? "Because we cannot determine from our record which theory was the basis for the jury's verdict, the error is harmful and reversal is required." *Mata,* 75 S.W.3d 499, 503 (Hardberger, C.J., dissenting).

In this case, the majority undertakes the harm analysis because the State confessed error and stated that the facts in this case are no better than the facts in *Mata v. State,* 46 S.W.3d 902 (Tex.Crim.App.2001). The State did confess error during oral argument, but that cannot be the end of this court's analysis.[1] The State's confession is a non-dispositive factor that we consider along with other relevant information. A well-principled attorney may confess error because he believes error exists and is honest enough to admit it. This is commendable behavior and assists both the court and the law. Ultimately, however, it is the court's job to make the determination of whether error occurred after reflection on the position of both parties. Quoting the United States Supreme Court, the Texas Court of Criminal Appeals recently stated in a similar situation:

> The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. The public interest that a result be reached which promotes a

---

1. Although the State confessed error during oral argument, the State's brief contends, "The facts in the present case are somewhat different from those in *Mata.*"

well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties.

When presented with confessions of error, we have agreed frequently that the able prosecutors have correctly concluded that error was presented. But we have always done so after an independent examination of the merits of the claim.

*Saldano v. State,* 70 S.W.3d 873, 884 (Tex. Crim.App.2002) (quoting *Young v. United States,* 315 U.S. 257, 258–59, 62 S.Ct. 510, 86 L.Ed. 832 (1942)).

In *Mata,* the Texas Court of Criminal Appeals instructed us on how to evaluate the reliability of retrograde extrapolation testimony. *See Mata v. State,* 46 S.W.3d 902 (Tex.Crim.App.2001). After reviewing the scientific literature and the position taken by courts in other jurisdictions, the court concluded as follows:

> We believe the science of retrograde extrapolation can be reliable in a given case. The expert's ability to apply the science and explain it with clarity to the court is a paramount consideration. In addition, the expert must demonstrate some understanding of the difficulties associated with retrograde extrapolation. He must demonstrate an awareness of the subtleties of the science and the risks inherent in any extrapolation. Finally, he must be able to clearly and consistently apply the science.
>
> The court evaluating the reliability of retrograde extrapolation should also consider (a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and

(c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation. These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much the person had to drink on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last drink, and how much and what the person had to eat either before, during, or after the drinking.

Obviously, not every single personal fact about the defendant must be known to the expert in order to produce an extrapolation with the appropriate level of reliability. As the Kentucky Supreme Court has recognized, if this were the case, no valid extrapolation could ever occur without the defendant's cooperation, since a number of facts known only to the defendant are essential to the process. If the State had more than one test, each test a reasonable length of time apart, and the first test were [sic] conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's BAC with limited knowledge of personal characteristics and behaviors. In contrast, a single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant. Somewhere in the middle might fall a case in which there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert. We cannot and should not determine today the exact blueprint for reliability

in every case. Suffice it to say that the factors must be balanced.

46 S.W.3d at 916–17.

In this case, McDougall's testimony contained some inconsistencies which appear to be misstatements; however, McDougall was able to explain the science of extrapolation to the jury with some clarity. McDougall's testimony was unlike his testimony in *Mata* in which the court cited numerous glaring inconsistencies, including numerous contradictions, math errors, and inconsistent statements. *See Mata*, 46 S.W.3d at 906 & n. 9–14, 914–15 & n. 81–86. In short, this is a much clearer case than *Mata*.

With regard to the three factors the Court of Criminal Appeals has instructed us to consider, one hour had elapsed between the offense and the test, as opposed to the two hour delay in *Mata*. Only one test was given, which is standard. Although McDougall did not know Bagheri's individual characteristics, the assumptions used as the basis for his hypothetical were later proven to be true through Bagheri's testimony, including (1) the time of Bagheri's last meal; (2) the type of alcohol Bagheri consumed; (3) the duration of Bagheri's drinking spree; and (4) the time of Bagheri's last drink.

Given that the assumptions underlying McDougall's extrapolation testimony were proven by Bagheri's subsequent testimony, albeit with a few inconsistencies, this case falls "somewhere in the middle" because "there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert." *Mata*, 46 S.W.3d at 916–17. Since this case falls "somewhere in the middle," I believe it is proper to address the harm analysis given the "great weight" that we give to the

State's confession of error. *Saldano*, 70 S.W.3d at 884.