IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 1251-02






HOSSEIN BAGHERI, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY






 Hervey, J., filed a dissenting opinion in which Keasler, J., joined.



DISSENTING OPINION 



 I respectfully dissent. In cases like this, I agree with the Court's decision that sufficiency of the
evidence to support a conviction under an "impairment" theory of intoxication is relevant to, but not
necessarily dispositive of, the Rule 44.2(b) harm analysis for the erroneous admission of retrograde analysis
evidence. See Bagheri v. State, S.W.3d slip op. at 13 (Tex.Cr.App., No. 1251-02, delivered this
date) ("question is not whether there was sufficient evidence to support the verdict") and slip op. at 13-14
(setting out various factors, including the entire record and the testimony, for appellate courts to consider
in determining whether erroneous admission of evidence "influence[d] the jury, or had but a slight effect");
compare Griffin v. United States, 112 S.Ct. 466, 469-74 (1991); Kitchens v. State, 823 S.W.2d 256,
259 (Tex.Cr.App. 1991), cert. denied, 112 S.Ct. 2309 (1992). The Court of Appeals, therefore, erred
to decide that sufficiency of the evidence to support a conviction under an "impairment" theory is "simply
irrelevant" to this harm analysis. See Bagheri v. State, 87 S.W.3d 657, 660 (Tex.App.-San Antonio
2002). (1)

 Having decided that the Court of Appeals applied an improper Rule 44.2(b) harm analysis, the
Court's opinion, rather than remanding the case to the Court of Appeals, conducts its own Rule 44.2(b)
harm analysis and concludes that the error was not harmless. See Bagheri, slip op. at 14-16. I disagree.

 The error in this case occurred when McDougall was permitted to testify that, based on
"hypothetical" intoxilyzer readings of 0.107 and 0.113 (which happened to be appellant's intoxilyzer
readings about an hour after the police stopped him), a subject's alcohol concentration an hour earlier could
have been between 0.107 and 0.143. (2) See Bagheri, slip op. at 6-7; Bagheri, 87 S.W.3d at 659. On
cross-examination, however, McDougall qualified this with testimony that the "extrapolated range of alcohol
concentrations could vary dramatically depending on several factors" that he apparently had not considered 
See Bagheri, slip op. at 6-7, 9. The defense reminded the jury of this during closing arguments when the
defense stated "that the extrapolation testimony was unreliable because the State's expert had not
considered variables which could have affected the results." See Bagheri, slip op. at 9. During its closing
arguments, the State equally emphasized evidence supporting both theories of intoxication. See Bagheri,
slip op at 8-9.

 Other properly admitted evidence proved that appellant's intoxilyzer readings about an hour after
the police stopped him were 0.107 and 0.113. See Bagheri, 87 S.W.3d at 659. There was other
properly admitted evidence that "almost everyone's driving abilities are impaired when their alcohol
concentration reaches 0.08." See Bagheri, slip op. at 5. There was a wealth of evidence that appellant
was intoxicated and impaired when he was stopped. (3) This also constitutes at least some evidence that even
supports the "per se" theory of intoxication. I would hold that, when a record such as the one here contains
a wealth of evidence to support the "impairment" theory and some evidence to support the "per se" theory,
any error in admitting somewhat qualified retrograde analysis evidence like that here "did not influence the
jury, or had but a slight effect."

 Even though cases such as Griffin and Kitchens are not necessarily dispositive of the harm
analysis, they nevertheless do have something relevant to say about it:

 It is one thing to negate a verdict that, while supported by evidence, may have been based
on an erroneous view of the law; it is another to do so merely on the chance-remote, it
seems to us-that the jury convicted on a ground that was not supported by adequate
evidence when there existed alternative grounds for which the evidence was sufficient. 
(Citation and internal quotes omitted).


Griffin, 112 S.Ct. at 474.

 

 I respectfully dissent.

 Hervey, J.


Filed: November 5, 2003

Publish


 
1. The State also claims that the Court of Appeals created an improper presumption of harm with its
reliance on a civil standard set out in Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000). 
See Bagheri, 87 S.W.3d at 660. Casteel decided that "when a trial court submits a single broad-form
liability question incorporating multiple theories of liability, the error is harmful and a new trial is required
when the appellate court cannot determine whether the jury based its verdict on an improperly submitted
invalid theory." See Casteel, 22 S.W.3d at 388. The civil standard in Casteel does not apply because
the standard in criminal cases is whether the error "influence[d] the jury, or had but a slight effect." See
Bagheri, slip op. at 13-14.
2. The parties agree that this testimony was erroneously admitted under our decision in Mata v. State,
46 S.W.3d 902, 917 (Tex.Cr.App. 2001).
3. This evidence consisted of appellant's erratic driving, his intoxicated appearance at the time of the
stop, his failing several field sobriety tests just after he was stopped and his intoxilyzer results about an hour
after the stop. See Bagheri, slip op. at 3-4. The jury obviously did not believe the defensive evidence. 
See Bagheri, slip op. at 8.