IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 324-03






DAWN KURETSCH STEWART, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTH COURT OF APPEALS


BEXAR COUNTY




 

 Keasler, J., delivered the opinion of the Court, joined by Keller, P.J., and Meyers,
Womack, Johnson, Hervey, Holcomb, and Cochran, JJ. Womack, J., filed a concurring
opinion, joined by Meyers and Johnson, JJ. Price, J., filed a dissenting opinion. 

O P I N I O N 



 We withdraw our previous opinion and substitute this opinion. Dawn Kuretsch Stewart
was convicted of driving while intoxicated. The trial judge allowed the State to present the
results of two breath tests administered to Stewart eighty minutes after she was pulled over but
disallowed the State's retrograde extrapolation evidence. The Fourth Court of Appeals
reversed. (1) We must decide whether that court erred in determining that breath test results are
inadmissible without retrograde extrapolation evidence. We find that it did.

Facts

 Around midnight on April 4, 1999, Stewart and a friend were driving back to Pleasanton
from a concert in San Antonio. Stewart was driving her friend's truck. A San Antonio police
officer, Jay Rodriguez, pulled Stewart over for weaving in her own lane, making an improper
lane change, and making an unsafe lane change. The officer testified that Stewart's eyes were
red and glassy, and her breath smelled of alcohol. Stewart also admitted to Rodriguez that she
drank a couple of beers at the concert. Officer Rodriguez conducted seven field sobriety tests
on Stewart and arrested her after she failed three of them. Rodriguez related the events
beginning with Stewart's traffic violations to her arrest, which were recorded on the videotape
equipment in his patrol car. The officer took Stewart to the police station, where she
consented to a breath test. The test results showed Stewart's blood alcohol concentration as
0.160 on one test and 0.154 on the other, both exceeding the legal limit of 0.10. About an
hour and twenty minutes elapsed from the time Stewart was pulled over until she submitted to
the breath tests, which included the time to conduct the field sobriety tests, for Officer
Rodriguez to complete his paperwork, for someone to pick up Stewart's friend at the scene,
and to transport Stewart to the police station.

 The Penal Code definition of intoxication in effect at the time of Stewart's arrest was
"having an alcohol concentration of 0.10 or more" (2) or "not having the normal use of mental or
physical faculties by reason of the introduction of alcohol . . . into the body." (3) The information
and the jury charge contained both definitions. 

 The trial judge admitted Stewart's breath alcohol test results but refused to permit the
State's expert to give retrograde extrapolation testimony, because the State's extrapolation
expert, Mr. McDougall, conceded that he did not have enough information to determine what
Stewart's alcohol concentration would have been at the time she drove. He testified that the
blood alcohol concentration shown by the results of the tests taken at the police station could
have been higher, lower, or the same as results that would have been obtained immediately after
Stewart drove, because Stewart's body could have been absorbing or eliminating alcohol at the
time of the test.Procedural History

 Stewart was convicted by a jury of driving while intoxicated. The trial judge sentenced
Stewart to 120 days in jail, probated eight months, and fined her $500 plus court costs. On
appeal, the Fourth Court of Appeals in San Antonio reversed Stewart's conviction, finding that
the results of the test were irrelevant without retrograde extrapolation and constituted no
evidence to show that Stewart was intoxicated when she drove. (4) The Court of Appeals also
found that by admitting the breath test results, the trial court encouraged the jury to conduct
its own retrograde extrapolation and to decide the case based on facts not in evidence. (5) The
court concluded that the admission of the breath test results without retrograde extrapolation
affected Stewart's substantial rights. (6) We granted the State's petition for discretionary review.

Analysis

 The State contends in its first two grounds for review that the Court of Appeals erred
in holding that the trial court improperly admitted Stewart's breath tests results. That court
found that without retrograde extrapolation evidence Stewart's breath test results were
irrelevant to show that Stewart was intoxicated at the time she drove, and the results of the
breath tests were no evidence that she was intoxicated at the time she was driving, because her
blood alcohol concentration level could have been more or less at the time of the test than
when she drove. (7) But under the Texas Rules of Evidence, "'[r]elevant evidence' means evidence
having any tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be without the
evidence." (8) Evidence need not by itself prove or disprove a particular fact to be relevant; it is
sufficient if the evidence provides a small nudge toward proving or disproving some fact of
consequence. (9)

 The issue here is whether Stewart was intoxicated at the time she drove. Stewart's
breath test results tended to make it more probable that she was intoxicated at the time she
drove under either definition of intoxication because they provided evidence that she had
consumed alcohol. And, there is no evidence that she consumed alcohol after driving. The
breath test results--along with Officer Rodriguez's testimony and the videotape of
Stewart--were probative evidence of her intoxication. The breath test results might not have
been conclusive proof that Stewart was intoxicated at the time that she drove, but that is of no
consequence. We conclude that the Court of Appeals erred in finding that the results of
Stewart's breath tests were irrelevant without retrograde extrapolation evidence.

 We also agree with the State that the Court of Appeals erred in using a "no evidence"
standard of review in analyzing the admissibility of the breath test results. The proper inquiry
is whether evidence is relevant, and if so, whether the trial court erred in finding that the
probative value was not substantially outweighed by the danger of unfair prejudice. (10) Because
we conclude that the breath test results were relevant evidence, it necessarily follows that the
Court of Appeals erred in finding that the breath test results were no evidence.

 To support its conclusion that the breath test results presented no evidence, the Court
of Appeals relied on Bagheri v. State, (11) which in turn cites two Pennsylvania Supreme Court
cases. (12) However, the Court of Appeals' reliance on Bagheri, and the cases cited by Bagheri,
was misplaced. Bagheri addressed whether it was harmless error to admit retrograde
extrapolation evidence, not the admissibility or relevancy of intoxilyzer test results. (13) Both
Jarman and Modaffare concerned sufficiency, not relevancy. And these cases have since been
superseded by statute. (14) 

 The State also argues that the Court of Appeals erred in finding that the admission of
the breath test results without retrograde extrapolation evidence invited the jury to conduct its
own crude retrograde extrapolation. (15) The Court of Appeals found that "[b]y simply admitting
the results of the breath test, the [trial] court encouraged the jury to decide the case based on
facts not in evidence." (16) Again, we agree with the State. Here, the jury had to decide whether
Stewart was intoxicated at the time she drove. This meant either the jury could find that
Stewart was intoxicated under the per se definition--that her blood alcohol concentration was
0.10 or more--or under the impairment theory--that she did not have the normal use of mental
or physical faculties by reason of the introduction of alcohol into her body. (17) The breath test
results were pieces in the evidentiary puzzle for the jury to consider in determining whether
Stewart was intoxicated at the time she drove. The jury had other evidence to decide that issue,
such as the arresting officer's testimony about Stewart's driving patterns before he pulled her
over, the results of Stewart's field sobriety tests, Stewart's admission to the officer that she
had a couple of beers at the concert, Stewart's statement that she "couldn't do [the field
sobriety tests] sober," the officer's videotape recording these events, and the fact that the
breath tests were conducted an hour and twenty minutes after Stewart's traffic stop. 

 The admission of the breath test results did not necessarily encourage the jury to engage
in its own crude retrograde extrapolation because the jury did not need to establish Stewart's
exact blood alcohol concentration at the time that she drove. The jury only needed to believe
beyond a reasonable doubt that either her blood alcohol concentration was 0.10 or more, or
that she failed to have the normal use of her mental or physical faculties by reason of
introduction of alcohol into her body, at the time she drove. The breath test results were
properly admitted evidence to consider with all of the other evidence of intoxication to
determine if Stewart was intoxicated at the time she drove. We find that the Court of Appeals
erred in finding that the trial court encouraged the jury to decide the case based on facts not
in evidence.

 Nevertheless, we disagree with the State's argument that the Court of Appeals erred in
finding that the trial court improperly admitted Stewart's breath test results because the
Transportation Code creates absolute admissibility of breath test results. The State contends
that the Texas Legislature has mandated the admissibility of intoxilyzer results in driving while
intoxicated cases because Section 724.064 of the Texas Transportation Code provides that
evidence of alcohol concentration shown by analysis of a person's breath taken at the request
of a peace officer is admissible. (18) We recently rejected this argument in Bagheri v. State. (19) 
We explained that "the determination that breath tests results should be admissible in DWI
prosecutions without the necessity of establishing the scientific basis for such tests under
Daubert and Kelly does not, in our opinion, relieve the State of the burden of showing that
those tests results in any given case are relevant, in the sense that they accurately reflect the
subject's alcohol concentration at the time of the offense." (20) But, we believe that the State met
its burden by showing that Stewart's breath test results were relevant.

 The dissent contends that "relevancy does not end the inquiry" and concludes that the
evidence is barred by Rule 403. (21) Although Stewart argued this on appeal, the Court of Appeals
did not reach this issue because it found that the breath test results were irrelevant and
presented no evidence of Stewart's intoxication at the time she drove. (22) The Court of Appeals'
opinion addressed only relevancy and harm, so these are the only issues properly before us. 
Therefore, in this case, relevancy does end the inquiry.

 In its third ground for review, the State argues that the Court of Appeals conducted an
improper harm analysis. Because we have concluded that the trial court did not err in admitting
Stewart's breath test results without retrograde extrapolation, we need not address this ground.

Conclusion

 We conclude that the Court of Appeals erred in finding that the trial court improperly
admitted Stewart's breath test results. The judgment is reversed and remanded to the Court of
Appeals to address Stewart's remaining points of error.


DATE DELIVERED: March 3, 2004

PUBLISH
1. Stewart v. State, 103 S.W.3d 483, 487 (Tex. App.--San Antonio 2003).
2. Act of Jun. 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586,
3696, (amended 1999) (current version at Tex. Pen. Code Ann. § 49.01(2)(B) (Vernon
2003)).
3. Act of Jun. 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586,
3696 (amended 1999) (current version at Tex. Pen. Code Ann. § 49.01(2)(A) (Vernon
2003)).
4. Stewart, 103 S.W.3d at 486.
5. Id.
6. Id. 
7. Id.
8. Tex. R. Evid. 401.
9. McCormick Handbook of the Law of Evidence § 185, at 436 (2d ed. 1972).
10. Tex. R. Evid. 401, 402, 403.
11. Bagheri v. State, 87 S.W.3d 657, 660 n.1 (Tex. App.--San Antonio 2002), aff'd
on other grounds, 119 S.W.3d 755 (Tex. Crim. App. 2003). 
12. Commonwealth v. Jarman, 601 A.2d 1229, 1231 (Pa. 1992); Commonwealth v.
Modaffare, 601 A.2d 1233, 1235 (Pa. 1992).
13. Bagheri, 87 S.W.3d at 660-61.
14. See Commonwealth v. Loeper, 663 A.2d 669, 674 n.7 (Pa. 1995); 75 Pa. Cons.
Stat. § 3731 (2003).
15. Stewart v. State, 103 S.W.3d 483, 486 (Tex. App.--San Antonio 2003).
16. Id.
17. See Act of Jun. 19, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws
3586, 3696, (amended 1999) (current version at Tex. Pen. Code Ann § 49.01) (Vernon
2003)).
18. Tex. Transp. Code Ann. § 724.064 (Vernon 2003).
19. Bagheri v. State, 119 S.W.3d 755, 760 (Tex. Crim. App. 2003).
20. Id.
21. Tex. R. Evid. 403.
22. Stewart v. State, 103 S.W.3d 483, 486 (Tex. App.--San Antonio 2003).