COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 




 
 
  
 DAVID LEMOS,
  
                             Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-02-00524-CR
  
 Appeal from the
  
 168th District Court
  
 of El Paso County, Texas
  
 (TC#20020D03349 )
 
 




 

O
P I N I O N

David Lemos
appeals his conviction for two counts of intoxication manslaughter and two
counts of causing an accident involving injury or death.  Finding the trial court erred in precluding
defense counsel from arguing a legitimate inference from the evidence, and
further finding that the error was harmful, we reverse and remand.

Facts








Just after midnight on April 6, 2002,
El Paso Police Officer Charles Walker responded to a complaint of a fight with
weapons on Van Buren Street, which is one-way westbound.  Upon arriving at the scene with lights
flashing and siren on, Officer Walker stopped in the left lane as a woman
flagged him down.  He observed a blue car
traveling the wrong way on Van Buren, headed toward him at a high rate of speed.  The car=s headlights were off and its
windshield was shattered.  The car
swerved to miss the squad car, and continued the wrong way down the
street.  Walker made a U-turn and pursued
the vehicle.  Almost immediately, he saw
the blue car collide with a black car at the intersection of Van Buren and Dyer
Streets.  Walker gave chase on foot after
he saw the driver of the blue car flee westbound. Walker shortly caught and
arrested David Lemos, who was bleeding from his face
and head and had a Astrong odor of alcohol on his breath.@ 
Lemos was taken to the hospital and treated,
and his blood was drawn one hour and forty minutes after the accident in order
to determine blood alcohol content, which was .10 at that time.  Both occupants of the black car died from
injuries sustained in the crash.  Lemos=s manslaughter indictments contained only the theory that he was
intoxicated by reason of Ahaving an alcohol concentration of .08 or more.@








At trial, neither the State nor Lemos offered expert testimony concerning retrograde extrapolation.[1]  During closing argument, counsel for the
defense repeatedly attempted to point out to the jury that while the State had
proven Lemos=s blood alcohol content was over the
legal limit nearly two hours after the fatal accident, there was no evidence of
what it had been at the time of the crash. 
Defense counsel then attempted to suggest that the jury could as easily
infer Lemos=s alcohol level went up after the
crash as it could infer it had decreased. 
The prosecutor objected to this argument as being beyond the scope of
the evidence.  The following lengthy
exchange took place before the jury:

Defense
Counsel:  So, what I=m going to suggest to you is that when you have only
this information, what it was an hour and a half later, you cannot reach a
logical conclusion about what it was around midnight or shortly
thereafter.  You don=t have enough information.  Because what I=m going
to suggest to you, as a matter of logic, is that blood alcohol concentration
can also be going up as well as going down.

 

Prosecutor:  Objection, Your Honor.  Again, he=s arguing outside the scope.

 

The
Court:  That, I will sustain.  There is no evidence to support that
argument, Mr. Ponder.

 

Defense
Counsel:  There=s no evidence to support the argument[?].

 

The
Court:  Mr. Ponder, don=t argue with the Court.

 

Defense
Counsel:  May I address the Court?  I respectfully submit that the Court is
incorrect, that the Jury is entitled to make inferences.

 

The
Court:  Just a moment.  You may argue the evidence, but you cannot
inject theories that were not presented by way of evidence, sir.

 

Defense
Counsel:  I=m not,
Your Honor.  I am arguing about
inferences, and I believe that it is a fair inference from the evidence, as
fair as the inference that his blood alcohol was declining, that his blood
alcohol was rising.

 

The
Court:  You premised that on the common
sense that alcohol leaves the body, otherwise we=d all be walking around drunk. 
That=s
a common sense conclusion or inference. 
But there is no testimony about any theories of
alcohol level increasing, so I=m
going to sustain the objection.

 

Defense
Counsel:  There is no evidence about the
alcohol evidence decreasing, Your Honor, or remaining the same.  There is none, period.  There was no testimony from any witness--

 

Prosecutor:  Objection, Your Honor.








 

Defense
Counsel:  --that--

 

Prosecutor:  Your Honor, may I
object to the leading [sic] objection as he argues with the Court, Your Honor.

 

The
Court:  Mr. Ponder--

 

Defense
Counsel:  Judge, may we approach?  I think this is a key point in this case.

 

The following exchange took place at
the bench, presumably out of the jury=s hearing:

The
Court:  Tell me what witness testified
the theory of alcohol level can increase as time passes.

 

Defense
Counsel:  No witness testified to that.

 

The
Court:  What is the basis for the
argument?

 

                                                              .   .   .

 

Defense
Counsel:  The same basis that would allow
the State to argue that it decreased or it remained the same.  There is no evidence that says that that
happened, so all you have when you have--

 

The
Court:  There=s two things we=re
talking about here.  One is, what is the
basis for your argument that the alcohol level increased from midnight to
1:40?  And there is no evidence.

 

                                                              .   .   .

 

Defense
Counsel:  Common sense says, Your Honor,
alcohol does not remain a constant.

 

The
Court:  It dissipates.

 








Defense
Counsel:  It also has to go up, doesn=t it?  It=s
impossible to have an alcohol constant without rising. It sits in your
stomach.  As it gets into your blood, it
will be going up.  Once it=s in your blood, it will be going down.  It is not a constant.  What goes up--

 

The
Court:  That=s a very good argument that you=re making here, but you don=t have any evidence.  You could have called an expert who could
have testified if you ingested it at 1 o=clock,
it won=t be in your bloodstream until 1:40, but you didn=t bring a witness to testify to that.

 

                                                                          .   .   .

 

The
Court:  I=m going
to make my final ruling.  I don=t want any more argument.  You will not argue the theory that the
alcohol level was rising.  There is no
evidence to support that theory.  There
is no evidence to support an argument that he had a drink at a given point in
time and that it was rising up until 1:40 in the morning.

 

Defense
Counsel:  We would make a motion for
directed verdict.  There=s no evidence what his content was at the time of the
accident.

 

The
Court:  Directed verdict denied.

 

Moreover, while precluding the defense from arguing its
inference that Lemos=s blood alcohol content may have
risen between the time of accident and time of testing, the trial court allowed
the State to argue the inverse:

Prosecutor:  Ladies and Gentlemen, he was intoxicated at
the time of the accident.  His breath
alcohol concentration was .10 at the time they took the blood.  Common sense tells you he was intoxicated at
the time of the collision.

 

Defense
Counsel:  Your Honor, we are going to
object to this argument as being an impermissible inference because there is no
evidence to support it.

 

The
Court:  Overruled.

 

The jury found Lemos guilty on all four counts charged.








Improper Denial of Jury Argument

In his first issue on appeal, Lemos argues that the trial court improperly precluded his
counsel from arguing that defendant=s drug alcohol concentration could
have been rising, rather than falling, between the time of the collision and
the time his breath was tested.  We
agree, as does the State.

Although the trial court has broad
discretion in controlling the scope of closing argument, it may not prevent
defense counsel from making a point essential to the defense.  Prohibiting counsel from making such a jury
argument is a denial of the defendant=s right to counsel when that argument
is one the defendant is entitled to make. 
McGee v. State, 774 S.W.2d 229, 238 (Tex. Crim.
App. 1989), cert. denied, 494 U.S. 1060, 110 S.Ct.
1535, 108 L.Ed.2d 774 (1990).  Only when
the trial court restricts the defense counsel from doing something it had the
legal right to do, however, is it considered a deprivation of counsel.  Jackson v. State,
992 S.W.2d 469, 476 (Tex. Crim. App. 1999).  The defense has the legal right to argue any
theory supported by the evidence.  Cf. Brown v. State, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997). 
All inferences from the evidence that are legal, fair, and legitimate
may be argued by defense. Melendez v. State, 4 S.W.3d 437, 442 (Tex.
App.--Houston [1st Dist.] 1999, no pet.), overruled on other grounds by
Small v. State, 23 S.W.3d 549 (Tex. App.--Houston [1st Dist.] 2000, pet.
ref=d).








Here, we cannot see that defense
counsel was doing more than suggesting that the jury draw certain inferences
from the evidence, or lack thereof, on Lemos=s blood alcohol level at the time of
the accident.  Nothing should have prevented  defendant
from Aarguing that his alcohol
concentration increased from the time of arrest to the time of testing.@ 
Forte v. State, 707 S.W.2d 89, 94-95 (Tex. Crim. App. 1986). 
The State concedes that excluding the argument was erroneous.  See Garcia v. State, 112 S.W.3d 839,
850-51 (Tex. App.--Houston [14th Dist.] 2003, no pet.); Verbois
v. State, 909 S.W.2d 140, 142 (Tex. App.--Houston [14th Dist.] 1995, no
pet.).  We must conclude that the trial
court committed error in preventing trial counsel from arguing this legitimate
inference to the jury.

Harm Analysis

Having concluded that the trial court
erred in disallowing the argument, we must decide whether the error caused harm
warranting reversal.  Tex. R. App. P. 44.2.  This, in turn, requires us to determine
whether the error was constitutional in dimension or involved other substantial
rights.  Id.








The Texas Court of Criminal Appeals
has held that an improper denial of a jury argument can constitute a denial of
the right to counsel.  Johnson v.
State, 698 S.W.2d 154, 166 (Tex. Crim. App. 1985)
(citing Riles v. State, 595 S.W.2d 858, 861 (Tex. Crim.
App. 1980)).  Denial of the right to
counsel is an error of constitutional magnitude.  U.S.
Const. amend. VI; Tex. Const. art.
I, '
10.  A criminal
defendant=s
constitutional rights to counsel and to a jury trial encompass a right
to have his theory of the case argued vigorously to the jury.  See U.S. v. DeLoach,
504 F.2d 185, 190 (D.C. Cir. 1974) (Restrictions on defendant=s closing argument were violation of
constitutional right to counsel, and not harmless beyond reasonable doubt.).

In contrast, the State relies on Martinez
v. State, 17 S.W.3d 677, 692 (Tex. Crim. App.
2000) and Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim.
App. 1998), for its claim that harm should be assayed under the rule that we
disregard any non-constitutional error not affecting substantial rights.  Tex. R. App. P. 44.2(b).  Mosley and Martinez, however,
both deal with improper argument by a prosecutor and not with the denial of a
proper argument by defense counsel.  Martinez,
17 S.W.3d at 692; Mosley, 983 S.W.2d at
259.  Thus, we cannot see that they
control here.  We conclude that we must
evaluate harm under Tex. R. App. P. 44.2(a), which requires
us to reverse unless we determine beyond a reasonable doubt that the error did
not contribute to Lemos=s
conviction.








The State next asserts that Lemos did manage to argue that the State=s evidence only proved his blood
alcohol content at the time blood was drawn, not when the crash occurred, and
thus he did not suffer any harm.  We find
this contention ignores the effect of cumulative adverse rulings.  Clearly, it was a central theory of the
defense case that the State had failed to prove Lemos
was in the elimination phase of alcohol concentration when he was tested, and
it was therefore not shown beyond a reasonable doubt that he had a level of .08
or higher when the accident occurred. 
When Lemos=s counsel attempted to make the
argument that defendant=s levels may have been rising after the accident, the State
objected and the trial court sustained. 
This led to the lengthy discourse outlined above.  Moreover, and more importantly, the trial
court stated in front of the jury that there was no evidence to support Lemos=s argument, while commenting that the State=s argument that Lemos=s blood alcohol content was falling
was only Acommon sense.@

We therefore find the erroneous
denial of a legitimate defensive theory caused Lemos harm, and we cannot find beyond a reasonable doubt
that the harm did not contribute to his conviction or punishment.  His first issue is sustained.

Motion
to Consider Unassigned Error








In a motion filed one day before this
case was submitted, Lemos urges this Court to
consider issues not raised in his original brief,
concerning whether his blood alcohol concentration test, unaccompanied by
reliable evidence of retrograde extrapolation, is insufficient to establish
blood alcohol at the time of the accident. 
We have reviewed his motion and Stewart v. State, 103 S.W.3d 483,
486 (Tex. App.--San Antonio 2003, pet. granted) and Bagheri
v. State, 119 S.W.3d 755, 763 (Tex. Crim. App.
2003), the cases  upon
which he relies in arguing that we should re-examine our decision in Carrillo
v. State, 2003 WL 1889943 (Tex. App.--El Paso April 17, 2003, pet. filed)
(not designated for publication).  We
note that the San Antonio court=s decision in Stewart was issued on January 8, 2003
and San Antonio=s decision in Bagheri was
issued in 2002,[2]
both well before Lemos=s brief on appeal was filed in this
Court.  Nothing precluded his counsel
from arguing for a re-examination of Carrillo at that time; that the
Court of Criminal Appeals has now written on Bagheri
and granted review on Stewart does not persuade us otherwise.  Moreover, our decision to reverse on Lemos=s first issue diminishes our concern that the interests of
justice might require us to consider the unassigned issues.  The motion is denied.

Conclusion

Because we sustain Lemos=s first issue, because he raises no render points in his
brief on appeal, and because we do not find a compelling reason to consider
unassigned error, we need not reach his other issues.  We reverse and remand for further proceedings
consistent with this opinion.

 

SUSAN
LARSEN, Justice

March 11, 2004

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Publish)

 











[1]Retrograde
extrapolation is a method of estimating the blood alcohol content of a person
at a certain time based on a test result from some time later.  See Bagheri v.
State, 119 S.W.3d 755, 758 (Tex. Crim. App. 2003).





[2]Bagheri v. State, 87 S.W.3d 657 (Tex.
App.--San Antonio 2002, pet. granted).