IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00213-CR

 

Phillip Jason Hall,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the County Court at Law No.
1

Johnson County, Texas

Trial Court No. M200603274

 



Opinion



 








            A jury convicted Phillip Jason Hall of
driving while intoxicated.  The court sentenced him to six months in jail and a
$1,000 fine, suspended imposition of sentence, and placed him on community
supervision for two years.  Hall contends in his sole issue that the arresting
officer lacked probable cause because the State failed to prove the reliability
of the LIDAR device which the officer used to determine Hall was speeding.  We
will reverse and remand.

            Hall filed a pretrial suppression
motion alleging that the traffic stop was made without probable cause or
reasonable suspicion.  At the suppression hearing, he explained that he was
challenging the reliability of the LIDAR technology which served as the basis
for the stop.

            The arresting officer testified that
the LIDAR device indicated Hall was traveling seventy-six miles per hour in an
area where the posted speed limit was sixty-five.  This was the sole basis on
which he stopped Hall’s car, and he provided no testimony regarding the manner
in which Hall was driving.  The officer testified that he is not certified to
use LIDAR equipment.  When he went on duty that night, he turned the LIDAR
device on and it went “through a self-test process” which indicated that it was
functioning properly.  He testified that he was not sure whether there is a
department employee or contractor who maintains the LIDAR equipment and ensures
its accuracy and reliability.

            Scientific evidence must be helpful to
the trier of fact to be admissible under Rule of Evidence 702, which among
other things requires that the evidence be reliable. Emerson v. State,
880 S.W.2d 759, 763 (Tex. Crim. App. 1994); State v. Rudd, 255 S.W.3d 293,
301 (Tex. App.—Waco 2008, pet. ref’d).  To be reliable, scientific evidence
must satisfy three criteria: “1) the underlying scientific theory must be
valid; 2) the technique applying the theory must be valid; and 3) the technique
must have been applied properly on the occasion in question.”  Emerson,
880 S.W.2d at 763 (citing Kelly v. State, 824 S.W.2d 568, 573 (Tex.
Crim. App. 1992)); Rudd, 255 S.W.3d at 301.  The proponent of scientific
evidence bears the burden of proving its reliability by clear and convincing
evidence.  Hernandez v. State, 116 S.W.3d 26, 30 (Tex. Crim. App. 2003)
(per curiam); Kelly, 824 S.W.2d at 573.

            In this case, the parties dispute
whether LIDAR technology is novel scientific evidence.  The Court of Criminal
Appeals has explained why it is important to differentiate between novel
scientific evidence and “established” scientific evidence, the reliability of
which is generally accepted in the relevant scientific community and in a
sufficient number of courts.

            A party seeking to introduce evidence
of a scientific principle need not always present expert testimony, treatises,
or other scientific material to satisfy the Kelly test.  It is only at
the dawn of judicial consideration of a particular type of forensic scientific
evidence that trial courts must conduct full-blown “gatekeeping” hearings under
Kelly.  Once a scientific principle is generally accepted in the pertinent
professional community and has been accepted in a sufficient number of trial
courts through adversarial Daubert/Kelly hearings, subsequent
courts may take judicial notice of the scientific validity (or invalidity) of
that scientific theory based upon the process, materials, and evidence produced
in those prior hearings.

 

            Similarly, once some courts have,
through a Daubert/Kelly “gatekeeping” hearing, determined the scientific
reliability and validity of a specific methodology to implement or test the particular
scientific theory, other courts may take judicial notice of the reliability (or
unreliability) of that particular methodology.

 

            Trial courts are not required to
re-invent the scientific wheel in every trial.  However, some trial court must
actually examine and assess the reliability of the particular scientific wheel
before other courts may ride along behind.  Some court, somewhere, has to
conduct an adversarial gatekeeping hearing to determine the reliability of the
given scientific theory and its methodology.

 

Hernandez,
116 S.W.3d at 28-29 (footnotes omitted).

            The State argued in the trial court
that LIDAR “is a laser device and it’s been admissible by statute in every
court in this state without any predicate to its [admissibility].”  However,
the State did not cite any particular statute or court decision to support this
argument.  In its appellate brief, the State cites several Texas cases
affirming the reliability of RADAR technology and several decisions from other
states affirming the reliability of LIDAR technology.

            RADAR and LIDAR are not the same.[1] 
See Alan LoFaso, Review of Selected 1998 California Legislation:
Transportation and Motor Vehicles, 30 McGeorge
L. Rev. 819, 822 (1999).  

Radar uses radio waves to measure speed by
calculating the frequency variations or “Doppler shift” of the wave reflecting
off a moving vehicle.  Light Detection and Ranging (LIDAR) is similar to radar,
except that it uses an infra red light (a laser beam) in lieu of radio waves to
measure the speed of a moving object.

 

Id. (footnotes
omitted).  Therefore, judicial decisions affirming the reliability of RADAR
technology are irrelevant to our inquiry.

            The parties have not cited and our
research has not disclosed any Texas authorities confirming the reliability or
admissibility of LIDAR technology.  Therefore, we hold that LIDAR technology is
novel scientific evidence which may be admissible only after its reliability
has been judicially determined in a “full-blown ‘gatekeeping’ hearing[ ] under Kelly.” 
See Hernandez, 116 S.W.3d at 29; see also People v. Canulli, 341 Ill. App. 3d 361, 792 N.E.2d 438, 445 (Ill. App. Ct. 2003) (“We find the use of Lidar laser
technology to measure the speed of an automobile constitutes ‘new’ or ‘novel’
evidence.”).

            As in Hernandez, the
prosecution failed to offer any evidence to establish the reliability of LIDAR
technology as a means of measuring the speed of a motor vehicle.  See
Hernandez, 116 S.W.3d at 31.  The authorities cited by the State on appeal
which support the reliability of this technology may be beneficial in resolving
this issue, but they must be first presented to the trial court in a Kelly
gatekeeping hearing.  Id. at 30-32 (“judicial notice on appeal cannot
serve as the sole source of support for a bare trial court record concerning
scientific reliability”).

            Notwithstanding the admissibility of
the LIDAR evidence, the State further contends that the court did not abuse its
discretion because the LIDAR device merely confirmed the officer’s observation
that Hall was speeding.  However, the record does not support this contention. 
The officer testified that the reading on the LIDAR device was the sole basis
for the stop.  He did not offer any testimony to suggest that he independently
observed Hall driving at a speed which he believed to be (1) in excess of the
posted limit or (2) greater than reasonable and prudent under the
circumstances.  See Tex. Transp.
Code Ann. § 545.351(a) (Vernon 1999); cf. Icke v. State, 36
S.W.3d 913, 915-16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d) (court did
not reach issue of admissibility of radar evidence because officer testified
that, based on his observations, he believed defendant was speeding and then
confirmed those observations with radar); Ochoa v. State, 994 S.W.2d 283,
285 (Tex. App.—El Paso 1999, no pet.) (defendant not harmed by erroneous
admission of evidence regarding radar because officer testified without
objection that he observed defendant driving at a “high rate of speed”).

            The court abused its discretion by
denying Hall’s pretrial suppression motion because the State failed to prove
the reliability of the LIDAR technology on which the officer relied to
determine Hall was speeding.  Accordingly, we sustain Hall’s sole issue.

We reverse the judgment and remand this cause for
further proceedings consistent with this opinion.  See Owens v. State,
135 S.W.3d 302, 312 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (reversing
and remanding for new trial after erroneous admission of expert testimony
regarding retrograde extrapolation); Bagheri v. State, 87 S.W.3d 657,
661 (Tex. App.—San Antonio 2002), aff’d, 119 S.W.3d 755 (Tex. Crim. App.
2003) (same).

 

FELIPE REYNA

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissents.  A separate opinion will not issue.)

Reversed and remanded

Opinion delivered and
filed July 30, 2008

Publish

[CR25]

 

 









[1]
              “RADAR,” of course, is the
well-known acronym for Radio Detection and Ranging.  Jeffrey A. Weiss, Maritime
Disasters Through the Ages, 32 J.
Mar. L. & Com. 215, 227 n.46 (2001).  “LIDAR,” by contrast, is the
acronym for Light Detection and Ranging.  Alan LoFaso, Review of Selected
1998 California Legislation: Transportation and Motor Vehicles, 30 McGeorge L. Rev. 819, 822 (1999).